Ojalvo et al., Appellants, *v.*
Board of Trustees of Ohio State University, Appellee.

[Cite as Ojalvo *v.* Bd. of Trustees of Ohio State Univ. (1984),
12 Ohio St. 3d 230.]

(No. 83-1500—Decided August 1, 1984.)

*Messrs. Schwartz, Shapiro, Kelm & Warren, Mr. Russell A. Kelm* and *Ms. Melodee S. Kornacker,* for appellants.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Messrs. Butler, Cincione, DiCuccio & Dritz* and *Mr. Alphonse P. Cincione,* for appellee.

*Mr. David L. Cleveland,* urging reversal for *amicus curiae,* Consumers League of Ohio.

LOCHER, J. The question before us is whether the Court of Claims abused its discretion in denying certification of a class action pursuant to Civ. R. 23(B)(3). For the reasons set forth below we hold that an abuse of discretion has occurred. Accordingly, we reverse the judgment of the court of appeals and remand for class certification.

I

The question of what constitutes an abuse of discretion has been examined by this court in numerous contexts. See, *e.g., Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82 [52 O.O.2d 376] (with respect to granting of a new trial); *Consumers' Counsel* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 49 (with respect to Public Utilities Commission of Ohio's orders). Recently in *Vinci* v. *American Can Co.* (1984), 9 Ohio St. 3d 98, we examined, in some detail, the question of what impact, if any, potential dissimilarity in remedies would have on class action certifications. We held as a general rule in class certification: "A trial court's determination that a cause proceed as a class action under Civ. R. 23 will not be disturbed absent an abuse of discretion." *Id.* at

paragraph one of the syllabus. We also held that "[w]hile potential dissimilarity in remedies is a factor to be considered in determining whether individual questions predominate over common questions pursuant to Civ. R. 23(B)(3), that *alone* does not prevent a trial court from certifying the cause as a class action." (Emphasis added.) *Id.* at paragraph three of the syllabus.

It is implicit from the above language that a trial court determination which seeks to deny class action certification should not predicate such denial solely on the basis of dissimilarity in remedies. Although the Court of Claims was not afforded the guidance of our *Vinci* decision at the time of its judgment, the outcome in *Vinci* was presaged by two appellate court decisions, *Portman* v. *Akron Savings & Loan Co.* (1975), 47 Ohio App. 2d 216 [1 O.O.3d 287], and *Miles* v. *N.J. Motors* (1972), 32 Ohio App. 2d 350 [61 O.O.2d 518]. Neither of these opinions was discussed by the Court of Claims in its opinion. This omission, in itself, is not determinative of an abuse of discretion. The concern remains, however, that a trial court should not dispose of a class certification solely on the basis of disparate damages.[1] Such a decision, being contrary to the weight of the authority and without an articulated rationale, is difficult to justify on appellate review although such a decision may not necessarily rise to the level of an abuse of discretion.

## II

The standard for "abuse of discretion" is readily defined, albeit broadly, as more than an error of law or judgment, but implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O.3d 169]; *Lee* v. *Jennings Transfer Co.* (1967), 14 Ohio App. 2d 221, 223 [43 O.O.2d 452]; *Granneman* v. *Cincinnati Street Ry. Co.* (1941), 67 Ohio App. 536, 537 [21 O.O. 556]. A

---

[1] Such a disposition would be contrary to the weight of authority not only in Ohio but also in other jurisdictions. See, *e.g., Vasquez* v. *Superior Court* (1971), 4 Cal. 3d 800, 94 Cal. Rptr. 796, 484 P. 2d 964 (retail installment buyers of freezers constitute valid class to seek rescission of sales contracts for fraud); *Steinberg* v. *Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E. 2d 634 (class action appropriate to adjudicate contract and fraud claims of plaintiffs, applicants for admission to defendant medical school); *Brazelton* v. *Kansas Pub. Emp. Ret. System* (1980), 227 Kan. 443, 607 P. 2d 510 (class of public employees permitted to challenge employer's unilateral retroactive requirement of additional employee contributions to pension fund as breach of contract); *Singer* v. *Topeka* (1980), 227 Kan. 356, 607 P. 2d 467 (class of police and fire fighters allowed to challenge statutes increasing pension plan contributions and limiting benefits as breach of vested contractual rights); *Deal* v. *999 Lakeshore Assn.* (1978), 94 Nev. 301, 579 P. 2d 775 (class of condominium owners may bring damage action against developer and contractor for defective construction and workmanship); *Onderdonk* v. *Presbyterian Homes of New Jersey* (1981), 85 N.J. 171, 425 A. 2d 1057 (class of retirement home residents allowed to maintain damage action for breach of "life-care" contracts); *Derenco, Inc.* v. *Benjamin Franklin Fed. S. & L. Assn.* (1978), 281 Ore. 533, 577 P. 2d 477, certiorari denied (1978), 439 U.S. 1051 (certifying class of homeowner/borrowers challenging bank's profit from tax and insurance reserve funds); *Sharkus* v. *Blue Cross of Greater Philadelphia* (1981), 494 Pa. 336, 431 A. 2d 883 (certifying class of employees challenging defendant's uniform rejection of claims practices; coverage under different Blue Cross contracts held not to bar certification because common question — whether retroactive denial of benefits was justified — predominated).

single analytical error by the trial court, in an otherwise correct analysis, might not necessarily constitute a sufficient basis to overturn the decision of the court under established tests for abuse of discretion. The trial court, however, went too far in requiring a "certainty that a common issue of breach of three to six thousand contracts probably exists." Such a criterion is not a part of any law of this state and, in the absence of authority or support, is impermissible. The first justification for denial of class certification by the Court of Claims was therefore incorrect as a matter of law and was a *prima facie* unreasonable burden to impose on the appellant herein. In addition, it appears that the Court of Claims was not reviewing the propriety of class certification but was attempting, contrary to the applicable law, to reach the merits of the claim. Class action certification does *not* go to the merits of the action. See *Eisen* v. *Carlisle & Jacquelin* (1974), 417 U.S. 156, 177; *Portman* v. *Akron Savings & Loan Co., supra,* at 220.

Ojalvo argued that the university had failed to give university employees, during a finite period of time, a specific percentage increase in pay. A careful review of the findings of fact and conclusions of law does not provide a basis to indicate why the single legal question of liability presented by appellant, whether the university unlawfully failed to pay a salary increase to its employees, should be resolved under an entirely unsubstantiated "certainty" test prior to trial on the merits. The trial court's statement that it "finds that there is no certainty that a common issue of breach of three to six thousand contracts probably exists" thus not only is unreasonable in its test of "certainty," but also is an attempt to merge an improper analysis of the merits of the claim with the proper test of commonality under Civ. R. 23(A)(2). The court's resolution of the narrow issue of commonality by the conclusion that the breach probably does not exist is unreasonable since no arguments were made, nor need have been made, with respect to the actual merits of the case beyond the necessity of establishing the validity of certification under Civ. R. 23. See *Eisen* v. *Carlisle & Jacquelin, supra; Portman* v. *Akron Savings & Loan Co., supra.*

Since the Court of Claims' first reason for denial of class certification is incorrect, it is necessary to closely examine the remaining reasons adopted by the court for denying the class certification to determine if any of these reasons are valid. If such validity exists, then notwithstanding the error with respect to the first reason, we would still be compelled to affirm the trial court's decision.

### III

The second reason offered by the Court of Claims for rejection of class certification is that no other members of the alleged putative class had filed a comparable suit or had sought to intervene. *Becker* v. *Schenley Industries, Inc.* (C.A.2, 1977), 557 F.2d 346, is cited to support this reason. In *Becker* the Second Circuit Court of Appeals affirmed the United States District Court for the Southern District of New York in denying a class action certification.

The basis for the denial was that the plaintiffs who brought the suit failed to intervene in an earlier case which had raised the same issue that plaintiffs subsequently attempted to relitigate. The Court of Claims' belief that other alleged class members must have filed a comparable suit prior to class certification thus not only is a misstatement of applicable law,[2] but also misconstrues the holding of the cited case.

## IV

The final reason given by the Court of Claims is that the claims of the alleged class members "may fall within and be subject to administrative and not Court determination." To buttress what might otherwise be an adequate reason, appellee offers the further refinement that each of the three thousand to six thousand potential claims should be handled on an individualized basis, administratively, pursuant to R.C. 2743.10. Appellee hypothesizes "the administrative procedure provides a speedy, judicially economic and efficient remedy." Appellee, however, fails to consider its own previous argument raised with respect to class notification requirements that "[f]aculty and administrators and professional staff members come and go frequently. Visiting professors and scholars are present on campus for short periods of time. Many of the faculty and staff who were at OSU during 1981-1982 may now be in diverse corners of the world, a fact making the notice requirement of Civ. R. 23(C)(2) an extremely time consuming and expensive chore." This prior argument, in conjunction with the supposition that many members of the alleged putative class are presently employed by the university, demonstrates the difficulty of obtaining administrative relief. As a practical matter many potential claimants would never realize they were entitled to pecuniary redress, particularly those individuals "in diverse corners of the world." Appellant accurately argues that potential claimants who continue to be employed by the university would have even less of an incentive to act individually against their present employer for relatively nominal amounts of money in an administrative proceeding.[3]

It has been noted that "the Rule 23 class action 'as a way of redressing group wrongs is a semi-private remedy administered by the lawyer in private

---

[2] If we were to accept the Court of Claims hypothesis that alleged class members must have either sought intervention prior to class certification or have initiated a compensable suit before class action certification we would create a "Catch 22" to preclude all class actions. Someone has to initiate a suit for the first time. By saying, in effect, that no suit can be filed until that suit has already been filed is illogical and unreasonable. Such a result is contrary to the basis for Civ. R. 23 and contravenes the intent behind class actions.

It would further appear the Court of Claims misconstrued the wording of Civ. R. 23(B)(3)(b) with respect to "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class" as the only factor, rather than as one factor among several, to consider in allowing certification.

[3] Appellant notes that his own claim is for approximately $161 and that no claims would exceed the $1,000 jurisdictional threshold of R.C. 2743.10 as individual claims.

practice'—a cross between administrative action and private litigation."
*Dolgow* v. *Anderson* (E.D.N.Y. 1968), 43 F.R.D. 472, 481 (citing Kalven &
Rosenfield, The Contemporary Function of the Class Suit [1941], 8 U. Chi. L.
Rev. 684, 717). See, also, 1 Newberg on Class Actions (1977) 9, Section
1000a. Cf. *Miles* v. *N.J. Motors, supra.* The class action would seemingly pro-
vide the ideal means of adjudicating in a single proceeding what might other-
wise become three thousand to six thousand separate administrative actions.
This is particularly true where, for any of the number of reasons previously
articulated, the individual class members might prefer not to seek redress or
could even be unaware of the availability of redress. The Court of Claims did
not review appellant's claims in this spirit and sought to render a decision ap-
parently based on fears of complex litigation (*ex hypothesi horribili ad
judicium terrendum*) rather than on the applicable law.

## V

The first step in deciding whether to certify a class action is to read Civ.
R. 23 and ascertain if the threshold requirements of division (A) have been
met. Once those requirements are surmounted the court must then turn to
Civ. R. 23(B)(3) to ascertain whether the plaintiff class comports with the
matters specified therein. It is clear to us that appellant's three thousand or
more potential class members are sufficiently numerous to fulfill subdivision
(A)(1). Moreover, a single question of averred breach of contract, albeit with
respect to several different types of contracts, should fulfill subdivision (A)(2)
where the percentage increase was uniform. It should be noted that Civ. R.
23(A)(2) specifies a commonality with regard to "questions of law or fact
common to the class." Such a standard clearly does not require commonality
with respect to damages but merely that the basis for liability is a common
factor for all class members. Appellant's averred loss of increased salary is
typical of the group as a whole since he lost the same percentage of increased
salary as other class members, thus fulfilling subdivision (A)(3). Civ. R.
23(A)(3) requires that "the claims or defenses of the representative parties
are typical of the claims or defenses of the class." Thus the Civ. R. 23(A)(3)
requirement is met by the essentially typical percentage recovery that ap-
pellant shares with the other potential class members. Finally, no convincing
argument has been articulated to show appellant could, or would, not fairly
and adequately protect the class in fulfillment of subdivision (A)(4). It is clear
to us that certification should not now be struck down, after fulfillment of the
Civ. R. 23(A) requirements, by an overly narrow construction of Civ. R.
23(B)(3). No one factor under Civ. R. 23(A) or (B)(3) should be overempha-
sized to defeat the fundamental purpose behind Civ. R. 23. See Weinstein,
Some Reflections on the "Abusiveness" of Class Actions (1973), 58 F.R.D.
299. ("When the organization of a modern society, such as ours, affords the
possibility of illegal behavior, accompanied by widespread diffuse conse-
quences, some procedural means should exist to remedy or at least deter that
conduct. * * * The solution, it seems to me, will have to come from a case by

case interpretation of subtle doctrines and standards, and *not by a rigid narrowing of the Rule,* preventing those who need it from obtaining appropriate redress." [Emphasis added.] *Id.* at 305.)

Nor should the trial court be allowed to apply impermissible legal criteria or standards. *Carey* v. *Greyhound Bus Co.* (C.A.5, 1974), 500 F. 2d 1372, 1380, citing *Cypress* v. *Newport News General & Nonsectarian Hospital* (C.A.4, 1967), 375 F. 2d 648; and *Matthies* v. *Seymour Manufacturing Co.* (C.A.2, 1959), 270 F. 2d 365.

Upon careful analysis of the trial court's findings of fact and conclusions of law as discussed hereinabove we hold as follows: a court abuses its discretion in denying certification of a class action: when it requires a certainty that a common issue of fact "probably exists" based on the merits of the class claim; when it finds that no other members of the alleged class had filed a comparable suit or had sought to intervene; where no alternative means of redress is readily available for potential class members; and where under the totality of circumstances Civ. R. 23 is narrowly construed to substantially hinder the remedial purpose of the rulè.

The Court of Claims in the case *sub judice* has, by applying impermissible legal criteria and so narrowly applying Civ. R. 23 to substantially hinder the remedial purpose of the rule, abused its discretion in view of the inadequacy of all the articulated reasons for denial of class certification.

We therefore reverse the judgment of the court of appeals and remand the cause to the Court of Claims for determination of class certification in conformity with this opinion.

*Judgment reversed and
cause remanded.*

W. Brown, Sweeney and C. Brown, JJ., concur.

Celebrezze, C.J., Holmes and J.P. Celebrezze, JJ., dissent.

Celebrezze, C.J., dissenting. The majority has ignored Civ. R. 23 and this court's prior holding in *Vinci* v. *American Can Co.* (1984), 9 Ohio St. 3d 98. I must therefore dissent.

The majority acknowledges, as they must, that in order to maintain a class action, Civ. R. 23(A)(1), (2), (3), and (4) must be satisfied. *Vinci, supra,* at 99. We may assume for purposes of this opinion that appellant's action satisfied each element of Civ. R. 23(A). The next requirement for class certification is the satisfaction of either Civ. R. 23(B)(1), (2), or (3). Appellant's motion for class certification only alleged that his action fell within Civ. R. 23(B)(3). That section provides in part:

"An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

"* * *

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

The trial court in the case at bar found that "questions of law and fact alleged to be common to members of the class do not predominate over any questions affecting only individual members, so as to make a class action superior to adjudicate those controversies, of amounts involved over which this Court has jurisdiction." Thus, appellant's action did not come within Civ. R. 23(B)(3).

In *Vinci, supra,* at paragraph one of the syllabus, this court stated:

"A trial court's determination that a cause proceed as a class action under Civ. R. 23 will not be disturbed absent an abuse of discretion."

Equally, in the absence of an abuse of discretion a trial court's determination that a cause *not* proceed as a class action will not be disturbed. In my view, the analysis utilized by the majority falls amazingly short of establishing an abuse of discretion on the part of the trial court.

The facts of the case *sub judice* reveal questions of law and fact both individual and common to the putative class. For example, even though there were questions common to the entire proposed class, such as the similarity of the terms of the employment contracts and appellee's delay in implementing the wage increase, there were individual questions concerning whether there was an acceptance of appellee's offer by each member of the class and the varying amount of damages to which each class member may be entitled. The trial court concluded that the individual questions predominated over the common questions. I am unwilling to say that the trial court herein committed an abuse of discretion in denying class certification. The record before this court is free of any indication that the trial court adopted an "unreasonable, arbitrary, or unconscionable" attitude which would justify finding an abuse of discretion and disturbing its ruling on the motion for class certification.

The only discussion in the majority opinion concerning Civ. R. 23(B) is contained in a few sentences dealing with the purpose of class actions. Rather than demonstrating precisely why the trial court's ruling that the individual questions were predominate over the common questions constituted an abuse of discretion, the majority implies that once Civ. R. 23(A) is satisfied, class certification should be granted. Such a holding directly contradicts the terms of the rule. Class certification must be denied if the trial

court concludes that the provisions of Civ. R. 23(B) have not been met. Such was the case herein. It follows that the court of appeals should have been affirmed.

Accordingly, I would affirm the judgment of the court of appeals.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.

HOLMES, J., dissenting. I would affirm the court of appeals in that such court was correct in finding that the trial court had not abused its discretion in denying a class action under the facts *sub judice*. As noted by Presiding Judge Whiteside in the court of appeals opinion, the plaintiff here sought a class action pursuant to Civ. R. 23(B)(3). In this rule it is provided that a class action is maintainable "* * * if the prerequisites of subdivision (A) are satisfied, *and in addition*:

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action." (Emphasis added.)

Therefore, in addition to the initial criteria or requirements established by Civ. R. 23(A) for the certification of the action as a class action, there must be found by the trial court to be a predominance of common questions of law or fact and a finding that the class action is a superior method of adjudicating the controversy.

Here the trial court properly addressed these latter two areas of concern provided by the rules and determined that there was not such a predominance of common questions of law and fact, and that a class action here would not be superior to another form of adjudication, *i.e.*, that of an administrative determination of these claims pursuant to R.C. 2743.10. In both regards, the court of appeals, upon a complete review of the pleadings and the record, determined correctly that the trial court had fairly interpreted the appropriate statutes and case law pertaining to class actions, and had not abused its discretion in denying such class action.

One need only review all of the facts surrounding the claim brought by the plaintiff, and the stance of other professors of Ohio State University who might bring similar claims, to conclude as did the trial court, that there was not a commonality of fact or law in all potential claims. A short review of such surrounding circumstances involved in the plaintiff's claim is in order. As a product of the state's budgetary problems for the fiscal biennium

1981-1983, the university's budget was not finalized until December 10, 1981. As part of that budget, President Edward H. Jennings proposed salary increases for the faculty and staff totaling nine percent. There would be an across-the-board increase of four percent for all faculty and administrative staff, plus five percent in discretionary funds for allocation by the separate colleges and principal administrative officers on the basis of merit. These salary increases were to become effective November 1, 1981.

The faculty and administrative staff, who were involved in such salary adjustments, can be separated into three distinct groups: (1) nine-month faculty, (2) eleven-month faculty, and (3) administrative and professional staff. The nine-month faculty is paid over a twelve-month period, running from October 1 until September 30 of each year. The eleven-month faculty and the administrative and professional staff, on the other hand, are paid over a twelve-month period running from July 1 until June 30 of each year. The effects of the delayed implementation of the salary increases were thus felt differently by each group. The nine-month faculty's raises were delayed by one month, while those of the eleven-month faculty and administrative and professional staff were delayed by four months.

In order to equalize the disparate effects of the delay in salary increases, President Jennings also proposed, as part of the university budget, a one-time cash supplement to all faculty and administrative and professional staff which was intended as a substitute for the appropriate percentage of delayed salary increase. This one-time payment was intended to cover the salary increase for the month of November 1981 for the nine-month faculty and November plus three months for the eleven-month faculty and the administrative and professional staff. This plan was approved by the Faculty Compensation and Benefits Committee, and the supplement checks were issued as scheduled on December 18, 1981.

Here, then, the facts show that the trial court was confronted with the possibility of being faced with a class action of many professors throughout the university who had been hired in a number of different categories with varying salary increments that would need to be calculated under the budget. Further, the trial court and the court of appeals recognized that additional individual determinations would have to be made relative to each professor, i.e., the terms of each contract, whether such was in force and effect, whether such terms had been violated, and other factual differences that might appear in each individual instance. In this latter regard, it should be pointed out that the record shows that the plaintiff has asserted just such an individualized factual pattern. Ojalvo claimed that the effect of the delayed salary increases was particularly harsh on him because he was near the age of retirement at the time and his retirement benefits are based upon an average of the actual salary received. This allegation raises definite questions as to the typicality requirement of Civ. R. 23(A), i.e., Ojalvo's claims may not be typical of the claims of those whom he purports to represent. In addition, the fact of retirement makes a determination of individual damages even

more difficult. If liability is found, it will be necessary to examine the contract of those individuals who have retired since 1981-1982 in order to determine the effect, if any, of the delayed salary increase upon the retirement benefits.

Management of such a class action would also be a difficult, if not impossible, task. By its very nature, employment in higher education is a transient endeavor. Faculty and administrative and professional staff members come and go frequently. Visiting professors and scholars are present on campus for short periods of time. Many of the faculty and staff who were at the university during 1981-1982 may now be in diverse corners of the world, a fact making the notice requirement of Civ. R. 23(C)(2) an extremely time-consuming and expensive chore.

Concluding, this is not a proper case for class action status. Questions of law and fact common to the members of the proposed class do not predominate over those affecting only individual members. Judicial economy, one of the basic purposes for the creation of class actions, would not be served in that a multitude of mini-trials would have to be conducted upon the separate issues which would be necessarily presented.

It is also my belief that the trial court and the court of appeals were correct in determining that the class action format of bringing this claim against the state of Ohio would not be superior to other available methods for a fair and efficient adjudication of the controversy. Here, all of the potential claims would be relatively small, seemingly between one hundred and one thousand dollars, and would be within the jurisdictional limit of those actions that could be brought against the state in a rather informal proceeding before the Clerk of the Court of Claims pursuant to R.C. 2743.10.

Adjudication of the instant controversy pursuant to the legislatively mandated procedure found in R.C. 2743.10 is vastly superior to the class action proposed by Ojalvo. The administrative procedure provides a speedy, judicially economic and efficient remedy for each faculty or staff member who is interested in pursuing a claim. The General Assembly has determined that this is the most fair and efficient method for the adjudication of such small claims against the state. Determination of this controversy by the Clerk of the Court of Claims would also be inexpensive. It would not be necessary for the claimants to incur costly attorney fees and the time-consuming and costly notice procedures of Civ. R. 23(C) could be avoided. In short, R.C. 2743.10 is a superior procedure for the fair and efficient adjudication of this controversy.

For the foregoing reasons, I would affirm the judgment of the court of appeals.

J. P. Celebrezze, J., concurs in the foregoing dissenting opinion.