[Cite as *Satterfield v. Ameritech Mobile Communications, Inc.*, 2017-Ohio-928.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104211**

## CINDY SATTERFIELD, ET AL.

PLAINTIFFS-APPELLEES

vs.

## AMERITECH MOBILE COMMUNICATIONS, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-03-517318

**BEFORE:** Kilbane, J., Keough, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 16, 2017

**ATTORNEYS FOR APPELLANT**

**For Cincinnati SMSA Limited Partnership**

James F. Lang
Matthew J. Kucharson
Calfee, Halter & Griswold, L.L.P.
1405 East Sixth Street
Cleveland, Ohio 44114

Kerin Lyn Kaminski
Karen L. Giffen
Giffen & Kaminski, L.L.C.
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114

Hans J. Germann (pro hac vice)
Mayer Brown, L.L.P.
71 South Wacker Drive
Chicago, Illinois 60606

**ATTORNEYS FOR APPELLEES**

**For Intermessage Communications**

Randy J. Hart
Randy J. Hart, L.L.P.
3601 South Green Road, #309
Beachwood, Ohio 44122

Carla M. Tricarichi
Tricarichi & Carnes, L.L.C.
3601 Green Road, Suite 309
Beachwood, Ohio 44122

Dennis R. Rose
Royce R. Remington
Hahn Loeser & Parks, L.L.P.
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316

Thomas R. Theado
Gary, Naegele & Theado, L.L.C.
401 Broadway Avenue, Unit 104
Lorain, Ohio 44052-1745

Mark D. Griffin
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant, Cincinnati SMSA Limited Partnership (operating under the trade name Ameritech Mobile ("Ameritech")), appeals from the trial court's order certifying a class action complaint brought by plaintiffs-appellees, Cindy Satterfield ("Satterfield"), Cindy Satterfield, Inc., n.k.a. Highland Speech Services, Inc. ("Highland"), and Intermessage Communications ("Intermessage") (collectively referred to as "plaintiffs"). For the reasons set forth below, we affirm.

**{¶2}** In December 2003, Satterfield, Highland, and Intermessage filed a class action complaint against Ameritech, Ameritech Mobile Communications, Inc., Verizon Wireless a.k.a. New Par, Verizon Wireless ("VAW"), L.L.C., and Airtouch Cellular Eastern Region, L.L.C. (the last three of which are collectively referred to as ("Verizon")). Ameritech and Verizon are providers of wholesale and retail cellular telecommunications services and equipment.

**{¶3}** Satterfield and Highland purchased cellular service from Verizon. Intermessage was a retail customer of Ameritech owned primarily by Kevin Moore ("Moore") and Robert Schimmelphennig ("Schimmelphennig"). Intermessage operated a two-way radio business and sold backup panels for alarm systems. Intermessage purchased cellular service from Ameritech and placed it into a product that was used to back up the alarm systems it sold. Intermessage paid Ameritech directly for the cost of the cellular service and then passed those costs to its customers. Intermessage dissolved in 2001 and Moore and Schimmelphennig created a new business, Wireless Associates,

Ltd. ("Wireless Associates"). Moore sold his interest in Wireless Associates to Schimmelphennig in 2005.

{¶4} The complaint is based upon a prior ruling of the Public Utilities Commission of Ohio ("PUCO"), finding that Ameritech and Verizon discriminated against Cellnet, an independent reseller of cellular services, with respect to their offering of wholesale services to Cellnet. *See In the Matter of Complaint of Westside Cellular, Inc. d.b.a. Cellnet v. New Par Cos. d.b.a. AirTouch Cellular & Cincinnati SMSA Ltd. Partnership*, PUCO Case No. 93-1758-RC-CSS, 2001 Ohio PUC LEXIS 18 (Jan. 18, 2001) (*"Cellnet Order"*). Cellnet alleged that Ameritech and Verizon had discriminated against it by unlawfully providing cellular service, equipment, and features to their own retail operations at rates, terms, and conditions more favorable than those that they made available to Cellnet. The PUCO found that Ameritech and Verizon committed numerous acts prohibited by R.C. Chapter 4905 (titled Public Utilities Commission — General Powers), commencing October 18, 1993.[1] Specifically, Ameritech and Verizon provided retail cellular service to end users at rates and upon terms and conditions more favorable than those that they made available to Cellnet.

{¶5} In their complaint, Satterfield, Highland, and Intermessage defined the members of its class as all subscribers to the Verizon defendants' service from 1991-1997

---

[1] Under R.C. Chapter 4905, the PUCO requires all Ohio cellular phone companies to sell cellular service at nondiscriminatory wholesale rates. By increasing the number of competitors that could offer cellular service, the public would benefit from the lower prices that such competition would naturally cause.

and all subscribers to Ameritech service from 1993-1998. Plaintiffs asserted the following three causes of action: (1) recovery for treble damages under R.C. 4905.61; (2) unjust enrichment; and (3) tortious acquisition of a benefit. They essentially claimed that

> [Ameritech] cheated Ohio cellular telephone consumers out of millions of dollars by excluding competitors that charged lower rates and by locking-in customers before other competitors could enter the market. By manipulating the market for cellular telephone service in Ohio — practices for which the PUCO has already found [Ameritech] liable — [Ameritech] caused each Class Member, including [Intermessage], to pay more for cellular telephone service than the market otherwise would have charged.

{¶6} In January 2006, the trial court dismissed plaintiffs' causes of action for unjust enrichment and tortious acquisition, finding that R.C. 4905.61 is the exclusive remedy for the plaintiffs. Under R.C. 4905.61, a plaintiff may recover against a public utility when the PUCO finds that a public utility engaged in conduct prohibited by statute or a PUCO order and the plaintiff suffered damages as a result of that conduct.

{¶7} In September 2008, the court granted Verizon's motion for judgment on the pleadings against Satterfield and Highland on statute of limitations grounds. In October 2008, the parties agreed to dismiss all claims against Ameritech Mobile Communications, Inc. Therefore, the remaining cause of action before the trial court was Intermessage's claim against Ameritech under R.C. 4905.61, which was limited by the trial court to the period of October 18, 1993 through September 8, 1995.

{¶8} Also in September 2008, the trial court concluded that Intermessage's claim for 1995-1998 was barred by the statute of limitations. The court found that the statute

of limitations for the 1995-1998 claim expired on January 18, 2002, which was one year after the PUCO issued the *Cellnet Order*. The court found, however, that Intermessage could maintain its claim for the 1993-1995 period because such claim is controlled by the Ohio Supreme Court's decision that reviewed the *Cellnet Order — Westside Cellular, Inc. v. Pub. Utils. Comm.*, 98 Ohio St.3d 165, 2002-Ohio-7119, 781 N.E.2d 199. In *Westside Cellular*, the Ohio Supreme Court reversed that part of the *Cellnet Order*, finding that Cellnet could not have suffered economic injury prior to 1995 because it had not earlier made a formal request to Ameritech for wholesale service. Instead, the court held that the applicable time frame commenced on October 18, 1993, which was the date of Cellnet's complaint to the PUCO. *Id.* at ¶ 10.

{¶9} Then in December 2008, Intermessage filed a motion for class certification. Intermessage sought certification on behalf of "all retail subscribers of [Ameritech] who purchased service with an Ohio area code during the period October 18, 1993 through September 8, 1995." In June 2015, the trial court conducted a pretrial conference to discuss the pending motion and required the parties to submit proposed orders.

{¶10} On February 9, 2016, the trial court entered an opinion and order granting Intermessage's motion for class certification. In a 19-page order, the trial court certified a class under Civ.R. 23(A) and (B)(3) consisting of "all retail subscribers of [Ameritech] who purchased service with an Ohio area code within geographic areas in which the PUCO decision found wholesale price discrimination during the period October 18, 1993 through September 8, 1995." In a thorough 19-page opinion, the trial court certified this

class "on all the remaining claims, issues, and defenses presented in this action."

{¶11} It is from this order that Ameritech appeals, raising the following assignment of error for review.

## Assignment of Error

The trial court erred in granting the motion for class certification filed by [Intermessage].

{¶12} In the sole assignment of error, Ameritech claims the court erred in granting class certification to Intermessage because it lacks standing to pursue its purported claim against Ameritech. Ameritech further argues that even if Intermessage had standing to bring the class action, the class was erroneously certified because: (1) it necessarily includes persons who were not injured; (2) individualized issues predominate over common questions of fact or law; (3) its claims are not typical of the purported class; and (4) a class action is not superior to other methods of adjudication.

## Standing

{¶13} Ameritech first argues that the class certification fails because Intermessage lacks standing as an adequate class representative for the following three reasons: (1) Intermessage no longer owns its claim against Ameritech, but assigned it to others after it dissolved; (2) after dissolving, Intermessage failed to pursue its claim against Ameritech as speedily as practicable under R.C. 1701.88(D); and (3) the violations at issue found by the PUCO concerned duties Ameritech owed to an independent reseller regarding the provision of wholesale services, while Intermessage and the purported class it seeks to represent consist of indirect, retail purchasers. We disagree.

{¶14} R.C. 1701.88, which establishes the powers of a corporation after dissolution, provides that "[a]ny claim existing or action or proceeding pending by or against the corporation may be prosecuted to judgment, with right of appeal as in other cases." *Id.* at (C). Therefore, "the dissolution of a corporation does not abate '[a]ny claim existing or action or proceeding pending by or against the corporation or which would have accrued against it * * *.'" *State ex rel. Falke v. Montgomery Cty. Residential Dev.*, 40 Ohio St.3d 71, 74, 531 N.E.2d 688 (1988), quoting R.C. 1701.88(B).

{¶15} Ameritech argues that Intermessage lacks standing because Intermessage transferred its claim to either Wireless Associates, Ltd., or Schimmelphenning and Moore, after dissolving. In support of its contention, Ameritech relies on certain deposition testimony of Moore and Schimmelphennig. However, when asked about Intermessage's assets Schimmelphennig stated that "I can't tell you specifically * * * [b]ecause I don't recall." Additionally, Moore was never asked whether Intermessage had transferred its claim against Ameritech. In his affidavit attached to Intermessage's motion for class certification, he stated that "[t]he claims brought in this suit on behalf of [Intermessage] existed in favor of [Intermessage] at the time of its dissolution, and are being pursued in this litigation pursuant to [R.C. 1701.88.]" Thus, Intermessage's claim against Ameritech remained an asset of Intermessage after dissolution.

{¶16} Ameritech also contends that Intermessage lacks standing to pursue its claim against it because Intermessage did not commence this action "as speedily as is practicable" when winding up its affairs. R.C. 1701.88(D) provides that the directors of

a dissolved corporation "shall proceed as speedily as is practicable to a complete winding up of the affairs of the corporation." "A corporation continues to exist after dissolution, for the purpose of winding up its affairs[.]" *Diversified Prop. Corp. v. Winters Natl. Bank & Trust Co.*, 13 Ohio App.2d 190, 193, 234 N.E.2d 608 (2d Dist.1967), paragraph one of syllabus.

{¶17} Ameritech claims that Intermessage waited 33 months to bring this suit. Ameritech acknowledges that Intermessage filed within the statute of limitations, but argues that it was not "speedily enough." The damages Intermessage seeks against Ameritech occurred from October 18, 1993, through September 8, 1995. However, recovery of those damages can be only be obtained through a lawsuit brought under R.C. 4905.61, which cannot be initiated without a prior finding that the utility had violated a PUCO statute or order. *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275, ¶ 21, citing R.C. 4905.61; *Milligan v. Ohio Bell Tel. Co.*, 56 Ohio St.2d 191, 383 N.E.2d 575 (1978), paragraph one of the syllabus. In the instant case, the liability finding was not made until 2001 by the *Cellnet Order*, which was not rendered final until 2002 by *Cincinnati SMSA L.P. v. Pub. Util. Comm. of Ohio*, 98 Ohio St.3d 282, 2002-Ohio-7235, 781 N.E.2d 1012. That finding expressly excluded the period of time now at issue in this lawsuit — October 18, 1993 through September 8, 1995. *Cellnet Order*, 2001 Ohio PUC LEXIS 18 at 269-271. The first finding of liability involving the relevant 1993-1995 time period was not made until December 26, 2002, by the Supreme Court in *Westside Cellular*. Intermessage's

complaint was filed within a year later on December 16, 2003. R.C. 1701.88(A) provides that a corporation may do such acts as are required to wind up its affairs and for this purpose the dissolved corporation "shall continue as a corporation for period of five years from the dissolution[.]" Intermessage filed this lawsuit within three years of its dissolution. Therefore, Intermessage commenced its complaint as speedily as practicable in accordance with R.C. 1701.88.

{¶18} Ameritech further argues that Intermessage lacks standing because the *Cellnet Order* did not establish liability as to Intermessage or any other retail customer. In the *Cellnet Order*, the PUCO held that Ameritech had violated Ohio statutes and PUCO orders, which provided that cellular telephone companies were required to maintain separate wholesale and retail operations; and the terms, conditions, and rates that the Ameritech's wholesale operations made available to Ameritech's affiliated retail operations were to be made available to any unaffiliated wholesale customer of Ameritech.

{¶19} In the *Cellnet Order*, the PUCO found that Ameritech was providing its own affiliated reseller with service and equipment for free, while charging, or attempting to charge, the unaffiliated reseller Cellnet for the same service. This resulted in Ameritech being able to charge its own customers for service when it had minimized the competition. Intermessage's economic expert believes that the price Ohio consumers would have paid without Ameritech's conduct is about two-thirds of what they did pay. R.C. 4905.61 does not require anything more than a finding of unlawful conduct on the

part of a public utility in order to permit an injured party to institute an action for damages in common pleas court.

{¶20} Thus, based on the foregoing, we find that Intermessage has standing to recover damages against Ameritech for the injury caused by the PUCO violations.

{¶21} Having found that Intermessage has standing to bring the class action against Ameritech, we now address Ameritech's arguments regarding the trial court's certification of the class action.

Class Action — Standard of Review

{¶22} A trial court has broad discretion in determining whether to certify a class action, and an appellate court should not disturb that determination absent an abuse of discretion. *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980). In *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442 (1998), the Ohio Supreme Court noted that "the appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded * * * in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id.* at 70, citing *Marks*; *In re NLO, Inc.*, 5 F.3d 154 (6th Cir.1993). "A finding of abuse of discretion * * * should be made

cautiously." *Marks* at 201.

{¶23} The *Hamilton* court further noted that the trial court's discretion in deciding whether to certify a class must be exercised within the framework of Civ.R. 23. *Id.* The trial court is required to "carefully apply the class action requirements" and to conduct a "rigorous analysis" into whether the prerequisites for class certification under Civ.R. 23 have been satisfied. *Id.* *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, paragraph one of the syllabus.

<u>Requirements for Class Action Certification</u>

{¶24} In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether the purported class comports with the factors specified therein. Accordingly, before a class may be properly certified as a class action, the following seven prerequisites must be met: (1) an identifiable class must exist, and the definition of the class must be unambiguous; (2) the named plaintiff representatives must be members of the class; (3) the class must be so numerous that joinder of all the members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three requirements under Civ.R. 23(B) must be met. *Hamilton*, 82 Ohio St.3d at 71, 694 N.E.2d 442, citing Civ.R. 23(A) and (B); *Warner v. Waste Mgt.*

*Inc.*, 36 Ohio St.3d 91, 96, 521 N.E.2d 1091 (1988). Of the Civ. R. 23(B) requirements, subsection (3) is applicable to the instant case. This section provides that a class action may be allowed if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that class action is superior to other available methods for fairly and efficiently adjudicating the controversy." We note that the burden of establishing that a cause of action merits treatment as a class action rests on the party bringing the lawsuit. *State ex rel. Ogan v. Teater*, 54 Ohio St.2d 235, 247, 375 N.E.2d 1233 (1978), citing *Tolbert v. Western Elec. Co.*, 56 F.R.D. 108 (N.D.Ga. 1972); *McFarland v. Upjohn Co.*, 76 F.R.D. 29 (E.D.Pa. 1977).

{¶25} Here, Ameritech raises arguments similar to those it raised before the trial court. It argues that the class certification must be reversed because the class necessarily includes persons who were not injured; individualized issues predominate; Intermessage failed to establish harm and damages on a class-wide basis; Intermessage cannot prove typicality; and a class action is not superior to other methods of adjudication. The trial court addressed these arguments and found in favor of Intermessage. We agree with the trial court.

{¶26} In its thoughtful and detailed opinion granting class action certification, the court wrote:

> Typicality: This case satisfies Civ.R. 23(A)(3), requiring that the claims or defenses of the representative parties are typical of the claims or defenses of the class. To satisfy this requirement, the claims of the named plaintiff "need not be identical" to those of other class members. [*PlannedParenthood Assn. v. Project Jericho*, 52 Ohio St.3d 56, 64, 556 N.E.2d 157].

[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485, 2000-Ohio-397, 727 N.E.2d 1265 (2000), quoting Newberg on Class Actions (3 Ed.1992) Sec. 3.13 (internal quotation omitted). The purpose of typicality is to protect absent class members and promote economy of class action by ensuring the named plaintiffs' interests are substantially aligned with the class. Typicality is met where there is no express conflict between the class representatives and the class. *Hamilton*, [82 Ohio St.3d at 77, 694 N.E.2d 442].

[Ameritech] argues [Intermessage] is uniquely atypical because it passed on the entire cost of cellular service it purchased to its customers. [Intermessage] was manufacturer and seller of backup panels for alarm systems. [Intermessage] purchased cellular service for the backup panels from [Ameritech], and then sold the panels to its customers. Thus, [Intermessage] did not suffer the overcharge damages claimed by other class members.

However, this argument constitutes "passing-on" defense, rebutted by the well-established rule that an offense is complete at the time of injury, regardless of the victim's later acts in mitigation. [*Hanover Shoe, Inc., v. United Shoe Machine Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968)]. [Intermessage] purports that the class is comprised of retail purchasers of cellular service, rather than retail users. Additionally, merely because [Intermessage] passed on the overcharge to its customers does not establish conflict between [Intermessage] and the other class members.

The evidence of record shows [Intermessage's] claim against [Ameritech] arises from the same events, practices, and conduct that give rise to the claims of every other class member, and the claims of each class member are based on the same legal theory. [Intermessage] alleges the same unlawful conduct was directed at or affected the named [Intermessage] and every other member of the class. More importantly, there is no conflict,

express or otherwise, between the named [Intermessage] and the class. The typicality criterion for class certification is satisfied in this action.

Adequacy:   This case also satisfies Civ.R. 23(A)(4), requiring that the representative parties fairly and adequately protect the interests of the class.   This requirement "is divided into consideration of the adequacy of the representatives and the adequacy of counsel."   [*Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091 (1988)].   [Ameritech] does not contest the adequacy of [Intermessage's] counsel to represent the class, but [Ameritech] does contend [Intermessage] is an inadequate class representative.

A named plaintiff is deemed adequate so long as his or her interest is not antagonistic to the interest of other class members.   *Hamilton*, [82 Ohio St.3d at 77-78, 694 N.E.2d 442]; *Warner* [at 98]; *Marks*, [31 Ohio St.3d at 203, 509 N.E.2d 1249].   The evidence of record shows the interests of [Intermessage] are not antagonistic to the interests of any other member of the class.   [Intermessage] was a retail subscriber and purchased service with an Ohio area code during the relevant time period.   [Intermessage's] interest is compatible with the interest of other class members who were also retail subscribers.

[Ameritech] argues [Intermessage] is an inadequate class representative because [Intermessage] may be distracted by an arguable defense peculiar to it.   Specifically, [Intermessage] is a dissolved corporation that failed to bring this matter as speedily as practicable to complete the winding up of its affairs as required by [R.C. 1701.88(D)].   [Intermessage] was voluntarily dissolved in March 2001 and brought the present action in December 2003. However, there is no strict rule requiring dissolved corporation to complete the winding up of its affairs by set date.   Pursuant to [R.C. 1701.88(A)], a corporation may do such acts as are required to wind up its affairs and for this purpose the dissolved corporation shall continue as corporation for period of five years from the dissolution. [Intermessage] filed this lawsuit within three years of its dissolution.   [Ameritech]'s argument has no merit.

Also, [Ameritech] now asserts [Intermessage] is an inadequate class representative because [Intermessage's] status as a dissolved corporation means it lacks standing to bring this claim.   Standing involves the question of whether party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.   *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 17, 2012-0hio-5017, 979 N.E.2d 1214.   The standing argument is similar to [Ameritech's] argument that [Intermessage] failed to bring this matter as speedily as practicable to complete the winding up of its affairs as required by R.C. 1701.88(D).

Both arguments invoke the Ohio statute dictating how a voluntarily dissolved corporation may bring lawsuit.

Under Ohio law, a dissolved corporation may bring lawsuit if it is brought as part of the company's winding up of its affairs. Under R.C. 1701.88(A), "when a corporation is dissolved voluntarily . . . the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs * * * and for such purposes it shall continue as corporation for period of five years from the dissolution, expiration, or cancellation." Pursuant to [R.C. 1701.88(B)], the voluntary dissolution of corporation shall not eliminate any remedy available to the corporation prior to its dissolution if the corporation brings an action within the time limits otherwise permitted by law.

In this case, [Intermessage] was dissolved in March 2001 and filed this lawsuit in December 2003. [Intermessage] seeks remedy arising from conduct which occurred between October 18, 1993 and September 8, 1995. The PUCO decision finding that [Ameritech] had engaged in price discrimination was released on January 18, 2001. Both [Ameritech's] alleged conduct and the PUCO decision occurred prior to the corporation's dissolution. There is no dispute the case was brought within the applicable statute of limitations. Accordingly, [Intermessage] is an adequate class representative and will not be distracted by an arguable defense peculiar to it.

* * *

[Intermessage] has satisfied the adequacy criterion for class certification.

Predominance: Questions of law and fact common to the members of the class must predominate over any questions affecting individual members. Predominance is met when there exists generalized evidence which proves or disproves an element on simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. [*Baughman v. State Farm Mut. Auto Ins. Co.*, 88 Ohio St.3d 480, 489, 727 N.E.2d 1265 (2000).]

In determining whether common questions predominate, "the focus of the inquiry is directed toward the issue of liability." *Cicero v. U.S. Four, Inc.*, 10th Dist. Franklin No. 07AP-310, 2007-0hio-6600, ¶ 38. The predominance requirement is satisfied where the questions of law or fact common to the class represent a significant aspect of the case and are able

to be resolved for all members of the class in single adjudication. *Schmidt v. AVCO Corp.* 15 Ohio St.3d 310, 313, 473 N.E.2d 822 (1984).

The central issue of this case is to what extent [Ameritech] is liable to [Intermessage] for [Ameritech's] wholesale price discrimination. In [the *Cellnet Order*,] the PUCO found [Ameritech] had engaged in unlawful discriminatory pricing practices. Under [R.C. 4905.61], a public utility which engages in price discrimination is liable to any person, firm, or corporation injured by such violation.

The issues presented by [Intermessage's R.C. 4905.61] claims are common to the proposed class — *e.g.*, whether [Ameritech's] conduct affected the market and proximately caused retail cellular prices to be artificially inflated; whether [Ameritech's] conduct prevented resellers from increasing their market share by lowering their prices; whether [Ameritech's] conduct prevented other resellers from entering the Ohio market; and whether and to what extent [Ameritech's] conduct proximately caused injury to the members of the class. These issues "represent significant aspect of the case" and are "able to be resolved for all members of the class in a single adjudication." *Schmidt*, [15 Ohio St.3d at 313, 473 N.E.2d 822]. All of the issues bearing upon [Ameritech's] liability are common to the class as whole. These issues can be adjudicated in single, class-wide trial and predominate over any individual issues that might remain.

[Intermessage's] expert Dr. Gale opined that without discriminatory pricing, resellers would have been more competitive, whether as group because there are more of them, or because particular reseller became more competitive, causing prices to decline. The price decline would have impacted all consumers. Gale Dep. at 67.

Dr. Gale further stated: "It is my opinion that the alleged acts by [Ameritech] had class-wide impact, and that there are feasible and widely-used methodologies for showing the impact through common proof." Report of John M. Gale ("Gale Report"), at p. 2. Dr. Gale identified one possible model for measuring damages the "McFadden/Woroch model" developed for the damages litigation arising from the PUCO determination[.] During this litigation, Dr. Gale assisted Professors McFadden and Woroch with "preparing an expert report which included damage estimate for Cellnet [aka Westside Cellular, the plaintiff in the PUCO case] based on standard model of competition and consumer demand well documented in the economics literature." Gale Report at p. 4.

Dr. Gale described the McFadden/Woroch model as follows: "[t]he damages model employed by Professors McFadden and Woroch estimated, for each year in each of seven Ohio SMSAs [Standard Metropolitan Statistical Areas], retail prices and sales for each of the two facilities-based cellular providers and Cellnet but for the price discrimination. The model relied upon data for costs, revenues, subscribers, and prices provided by defendants and Cellnet. In addition, the model used estimates of consumer demand for wireless services published in the economics literature. The methodology did not vary across SMSAs and years. During the [Cellnet] litigation, variations of the damages model were introduced by one defendant's expert that included entry of multiple resellers at the non-discriminatory wholesale prices." Gale Report at p. 4. As explained by Dr. Gale, "[t]hese models, relied upon by both Cellnet's and defendant's experts demonstrate not only that model which shows class-wide impact is available, but that such model has already been developed and used." [*Id.*]

[Ameritech] argues the court must deny class certification because Dr. Gale does not propose definite method allocating damages among the proposed class. [Ameritech] challenges Dr. Gale's Report because, as Dr. Gale admits, he has never used the McFadden/Woroch model to determine class-wide impact and damages in this case. In fact, the model would have to be adapted to show class-wide impact across the retail market. Gale Dep. p. 69.

[Ameritech] relies principally on the United States Supreme Court's decision in [*Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013)]. [Ameritech] argues that *Comcast* stands for the proposition that [Intermessage] must provide damages model susceptible to measurement across the entire class in order to satisfy the predominance requirement. This reading of the *Comcast* holding is unduly broad.

* * *

*Comcast* was unusual because the plaintiff's damages model was disconnected from the plaintiff's theory of liability. Comcast is distinguished because in this case [Intermessage's] proposed theory of damages is consistent with its theory of liability. [Intermessage's] expert may not have an exact measure of damages, but as the *Comcast* court acknowledges, at this stage of class certification an exact measure is not required. *Id.*

The court need only probe the underlying merits of plaintiff's claim for the purposes of determining whether plaintiff has satisfied the prerequisites of class certification. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 242, 2013-Ohio-3019, 994 N.E.2d 408. [Intermessage] is pursuing this claim pursuant to [R.C. 4905.61], which allows person, firm or corporation injured by public utility's price discrimination to seek damages. The PUCO already determined that [Ameritech] engaged in price discrimination. [Intermessage] must prove injury in order to establish liability. Whether [Intermessage] can provide working damages model goes directly to the merits of [Intermessage's] claim. While class brought pursuant to [R.C. 2905.61] must prove damages to prevail on the merits, such proof is not prerequisite to class certification. Predominance "requires showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." [*Amgen Inc. v. Connecticut Retirement Plans Trust Funds*, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013).]

Moreover, [Intermessage] need not prove that each element of claim can be established by class-wide proof. The rule requires "that common questions *predominate* over any question affecting only individual class members." *Glazer v. Whirlpool Corp.* (*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*), 722 F.3d 838, 860-61 (6th Cir.2013), quoting *Amgen* [at 1196] (internal quotation omitted) (emphasis in original). *Comcast* does not abrogate existing case law dictating that the court should not delve too deeply into the merits of plaintiff's claim at the class certification stage of the litigation. *Stammco*, 136 Ohio St.3d at 242. Moreover, "[w]hether mathematical formula could be used to calculate individual damages is irrelevant because the need to calculate damages individually, by itself, is not reason to deny class certification." *Hoang v. E*Trade Group, Inc.*, 151 Ohio App.3d 363, 2003-Ohio-301, ¶ 21, (8th Dist.), jurisdictional motion overruled, 99 Ohio St.3d 1437 (8th Dist.2003).

* * *

[Intermessage's] claims in this case are common to the class. [Intermessage's] theory of liability consists of whether [Ameritech's] anti-competitive conduct affected the market and proximately caused retail cellular prices to be artificially inflated. The damages theory is the difference between what retail customers actually paid for cellular service and what retail customers should have paid but-for [Ameritech's] anti-competitive conduct. Dr. Gale's report proposes a model that could be adapted to measure class-wide damages resulting from [Intermessage'] only

theory of liability.

Although Dr. Gale does not provide an exact model for measuring damages, the court will have an opportunity through the factual development of the case to consider whether the damages formula can be established and utilized. Also, [Intermessage] will be subject to summary judgment if it is not able to establish damages model. Finally, the court may alter or amend its certification of the class at any time prior to final order. Civ. R. 23(C)(1)(c).

[Ameritech] additionally argues that determination of injury in fact would require an individual by individual review of each class member claim and that this fails the predominance requirement of class certification. In fact, Dr. Gale testified at his deposition "[i]f wanted to determine the damages to particular individual, would have to go and find out what they paid, would have to go and find out how they would choose among alternatives, and then would have to go and make prediction based on the alternatives that were available to them in the but-for world, which one of those alternatives they would choose. Then I could make an estimation of the damages for that individual." Gale Dep. at 104:2-10.

However, individualized damages are not fatal to class certification because predominance focuses on liability, rather than damages. *Ojalvo v. Board of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232[, 466 N.E.2d 875] (1984). It is not necessary for a plaintiff to prove "that each element of claim can be established by classwide proof: What the rule does require is that common questions *predominate* over any questions affecting only individual class members." [*Glazer*, 722 F.3d at 858, quoting [*Amgen*, 133 S.Ct. at 1196], (internal quotation omitted) (emphasis in original).

To clarify, if common liability issues predominate over issues of individual liability or damages, then the predominance requirement is satisfied even though the actual damages may be individualized. Here, the issue of whether [Ameritech's] anti-competitive conduct affected the market and proximately caused retail cellular prices to be artificially inflated is common to the class.

[Intermessage] has demonstrated that the common liability issues predominate over individual claims of class members and has satisfied the predominance requirement for class certification.

Superiority: Finally, this case satisfies the superiority requirement for

class certification. The superiority criterion is satisfied where "the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members claims." [*Warner*, 36 Ohio St.3d at 96, 521 N.E.2d 1091]. "[I]n determining whether class action is superior method of adjudication, the court must make comparative evaluation of the other processes available to determine whether class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." *Westgate Ford Truck Sales, Inc. v. FordMotor Co.*, 8th Dist. Cuyahoga No. 86596, 2007-Ohio-4013, ¶ 78, quoting [*Schmidt*, 15 Ohio St.3d at 313, 473 N.E.2d 822.] (internal quotations omitted). Class certification should be granted where "[r]epetitious adjudication of liability, utilizing the same evidence over and over, could be avoided." [*Marks*, 31 Ohio St.3d at 204, 509 N.E.2d 1249].

In the instant case, class certification will permit class-wide adjudication of all issues bearing upon [Ameritech's] liability. Without class certification, adjudication of class members claims would require tens of thousands of individual suits with concomitant duplications of costs, attorneys' fees, and demands upon court resources. *Ojalvo*, *supra*, 12 Ohio St.3d at 235 (a class action is "the ideal means of adjudicating in single proceeding what might otherwise become three thousand to six thousand separate administrative actions"). Similar benefits will accrue to [Ameritech] through avoidance of multiple suits and multiple jury determinations.

Moreover, if class members were required to pursue their claims individually, the potential for recovery likely would be outweighed by the cost of investigation, discovery, and expert testimony. Class certification overcomes the lack of incentive individuals would face in attempting to recover small amounts with individual actions. [*Hamilton*, 82 Ohio St.3d 67 at 80, 694 N.E.2d 442]. The aggregation of class members claims in class action will ensure there is "a forum for the vindication of rights" that is economical enough to pursue. *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 431, 1998-Ohio-405, 696 N.E.2d 1001, quoting *Hamilton* [at 80] (1998) (internal quotations omitted).

Based on the whole of the parties' submissions and the evidence presented, class action is the most efficient means of adjudicating [Ameritech's] alleged liability and the damages allegedly caused to the proposed class members. A class action will avoid the repetitious adjudication of liability and is sufficiently effective as to justify the judicial time and energy involved. [Intermessage] has satisfied the superiority requirement for class certification.

{¶27} We agree with the detailed findings of the trial court. Intermessage has satisfied the predominance, typicality, superiority, and adequacy requirements for class certification. Intermessage's claim against Ameritech arises from the same events, practices, and conduct that give rise to the claims of every other class member, and the claims of each class member are based on the same legal theory. Furthermore, the PUCO has already determined that Ameritech engaged in price discrimination. In the instant case, Intermessage is pursuing its claim under R.C. 4905.61, which allows a corporation injured by public utility's price discrimination to seek damages. In support of its predominance contention, Ameritech's relies on *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.2d 1224 and *Ford Motor Credit v. Agrawal*, 8th Dist. Cuyahoga No. 103667, 2016-Ohio-5928, and argues that Intermessage did not suffer any injuries because it passed the costs on to its customers.[2] The court found, and we agree, that the issue of whether Ameritech's anticompetitive conduct affected the market and proximately caused retail cellular prices to be artificially inflated is common to the class. If common liability issues predominate over issues of individual liability or damages, then the predominance requirement is satisfied even though the actual damages may be individualized.

---

[2]*Felix* and *Ford Motor Credit* stand for the proposition that all class members must be in fact injured by defendant's actions. *Felix* was an Ohio Sales Consumer Practices Act ("OSCPA") case that carried an extra burden of proof for the plaintiff. In *Ford Motor Credit*, this court found that individualized inquiry is necessary to determine injury. *Id.* at ¶ 30. These cases are factually distinguishable as the instant case does not involve the OSCPA and the record demonstrates an injury to all class members.

**{¶28}** We are mindful that

due deference must be given to the trial court's decision. A trial court that routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. * * * A finding of abuse of discretion * * * should be made cautiously.

*Marks*, 31 Ohio St.3d at 201, 509 N.E.2d 1249.

**{¶29}** Here, the trial court presided over the instant case for over 13 years and concluded that Intermessage established the requirements to maintain a class action under Civ.R. 23. In doing so, the trial court conducted a 19-page analysis into whether the prerequisites for class certification under Civ.R. 23 have been satisfied. Cognizant of the fact that a class-action certification does not go to the merits of the action, the trial court acknowledged that it will have an opportunity to consider whether damages can be established, summary judgment is possible if Intermessage is not able to establish damages, and the court's ability to alter or amend its certification of the class at any time prior to final order.

**{¶30}** Therefore, based on the foregoing, we find that the trial court did not abuse its discretion in certifying the class in the instant case.

**{¶31}** The sole assignment of error is overruled.

**{¶32}** Accordingly, judgment is affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
ANITA LASTER MAYS, J., CONCUR