**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Satterfield v. Ameritech Mobile Communications, Inc.,* **Slip Opinion No. 2018-Ohio-5023.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5023

SATTERFIELD ET AL.; INTERMESSAGE COMMUNICATIONS, APPELLEE, *v.* AMERITECH MOBILE COMMUNICATIONS, INC., ET AL.; CINCINNATI SMSA LIMITED PARTNERSHIP, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Satterfield v. Ameritech Mobile Communications, Inc.,* **Slip Opinion No. 2018-Ohio-5023.]**

*Damages—Class actions—Attempted recovery under R.C. 4905.61 of treble damages from public utility based on prior order of the Public Utilities Commission—R.C. 4905.61 limits recovery of treble damages to the "person, firm, or corporation" directly injured as a result of the "violation, failure, or omission" found by the Public Utilities Commission.*

(No. 2017-0684—Submitted July 18, 2018—Decided December 18, 2018)

APPEAL from the Court of Appeals for Cuyahoga County, No. 104211, 2017-Ohio-928.

_____

**KENNEDY, J.**

**{¶ 1}** In this discretionary appeal from a judgment of the Eighth District Court of Appeals, we consider the parameters established by R.C. 4905.61 regarding the parties that have standing to bring a treble-damages action pursuant to that statute. Here, appellee, Intermessage Communications ("Intermessage"), and members of a proposed class of retail cellular-telephone-service subscribers seek to recover treble damages under R.C. 4905.61 for regulatory violations committed in the mid-1990s when those regulatory violations—as determined by the Public Utilities Commission of Ohio ("PUCO")—related to the wholesale cellular-service market.

**{¶ 2}** Because the language of R.C. 4905.61 limits recovery of treble damages to the "person, firm, or corporation" directly injured as a result of the "violation, failure, or omission" found by the PUCO, we hold that Intermessage and the proposed class of retail cellular-service subscribers lack standing to bring an action pursuant to R.C. 4905.61. Moreover, because the resolution of the first proposition of law asserted by appellant, Cincinnati SMSA Limited Partnership (operating under the trade name Ameritech Mobile) ("Ameritech"), resolves this case, we decline to address Ameritech's other proposition of law. We therefore reverse the judgment of the Eighth District and order the matter dismissed.

## FACTS AND PROCEDURAL HISTORY

**{¶ 3}** The origins of the current action arose in October 1993, when Westside Cellular, Inc., d.b.a. Cellnet ("Cellnet"), filed a multicount complaint with the PUCO against Ameritech and other wholesale cellular-service providers. *See In re Complaint of Westside Cellular, Inc. v. New Par Cos.*, Pub. Util. Comm. No. 93-1758-RC-CSS, 2001 Ohio PUC LEXIS 18, *1-2, 96-100, 133-137, 230-233 (Jan. 18, 2001) ("the *Cellnet* order"). We will focus on only the allegations against Ameritech and the resolution of those allegations in the *Cellnet* order because

2

Ameritech is the only wholesale cellular-service provider involved in the current dispute.

{¶ 4} Cellnet, a cellular-telephone-service reseller, had purchased cellular service on a wholesale basis from Ameritech, rebranded the service, and marketed it on a retail basis. *Westside Cellular, Inc. v. Pub. Util. Comm.*, 98 Ohio St.3d 165, 2002-Ohio-7119, 781 N.E.2d 199, ¶ 1. Cellnet alleged that Ameritech had engaged in rate discrimination against it. More specifically, Cellnet claimed that Ameritech had failed to offer cellular service, equipment, and features to Cellnet on a wholesale basis at the same rate Ameritech had charged its own retail businesses. *Id.*; *see also* the *Cellnet* order, 2001 Ohio PUC LEXIS 18 at *230-233. Cellnet also claimed that Ameritech had failed to maintain separate operations and records for its wholesale and retail businesses. *Id.* at *96-100.

{¶ 5} In 2001, the PUCO issued the *Cellnet* order, finding that Ameritech had engaged in numerous practices that were prohibited by R.C. Chapter 4905. The PUCO found that Ameritech had failed to maintain its records in a manner that satisfied the PUCO's overriding purpose to ensure that wholesale cellular-service providers were providing access on a nondiscriminatory basis. *Id.* at *108-112. The PUCO further found that Ameritech had violated R.C. 4905.33 by charging Cellnet a higher rate than Ameritech's retail affiliate paid for the same service under substantially the same circumstances and conditions. *Id.* at *151.

{¶ 6} Ameritech appealed the findings of the PUCO in the *Cellnet* order as of right to this court. We affirmed. *Cincinnati SMSA Ltd. Partnership v. Pub. Util. Comm.*, 98 Ohio St.3d 282, 2002-Ohio-7235, 781 N.E.2d 1012, ¶ 8.

{¶ 7} Based upon the PUCO's ruling regarding Ameritech's activities in the wholesale cellular-service market, Intermessage and two other named plaintiffs who are no longer involved in this litigation—Cindy Satterfield and Cindy Satterfield, Inc., a.k.a. Highland Speech Services, Inc.—filed the instant class-action complaint against Ameritech and other parties in December 2003. Because

only the claims of Intermessage and the proposed class against Ameritech are at issue in this case as it comes to us, we will limit our discussion of the facts to those parties.

{¶ 8} Intermessage was a retail purchaser of cellular-telephone service from Ameritech. It entered into contracts with Ameritech for cellular-telephone numbers and used the accompanying service to back up alarm systems that Intermessage sold to its customers. Intermessage paid Ameritech for the retail cellular service and then passed those costs on to its customers.

{¶ 9} Intermessage initially sought to define the class as "all subscribers to Ameritech Mobile service from 1993-1998" and sought recovery under several different theories of relief, including under R.C. 4905.61. Intermessage claimed that the practices Ameritech had engaged in—practices for which the PUCO had already found Ameritech liable—included preventing cellular-service resellers from entering the Ohio market and from increasing the resellers' market shares. Intermessage further alleged that these practices caused each member of the proposed class to pay more for cellular-telephone service than the retail market otherwise would have charged.

{¶ 10} The trial court in 2006 and 2008 made several rulings that limited Intermessage's class action against Ameritech to recovery only under R.C. 4905.61 and only for the period October 18, 1993, through September 8, 1995.

{¶ 11} The trial court eventually granted Intermessage's motion for class certification, certifying a class under Civ.R. 23(A) and (B)(3) consisting of "all retail subscribers of [Ameritech] who purchased service with an Ohio area code within geographic areas in which the PUCO decision found wholesale price discrimination during the period October 18, 1993 through September 8, 1995" upon its finding that the statutory prerequisites for class certification had been satisfied.

{¶ 12} The Eighth District Court of Appeals affirmed, concluding that the trial court had not abused its discretion in certifying the class. 2017-Ohio-928, 86 N.E.3d 830, ¶ 30.

{¶ 13} We accepted the following two propositions of law:

A claimant lacks standing to sue under R.C. 4905.61 for "treble the amount of damages sustained in consequence of the violation" absent a prior determination by the Public Utilities Commission that the claimant's rights under a specific public utilities statute or commission order were violated.

Where a plaintiff relies upon a damages model to establish that common issues would predominate, the model must demonstrate that injury-in-fact and damages can be proven on a class-wide basis.

151 Ohio St.3d 1501, 2018-Ohio-365, 90 N.E.3d 945.

**ARGUMENTS OF THE PARTIES**

{¶ 14} Ameritech contends that Intermessage's class action cannot survive because the plain meaning of R.C. 4905.61 provides standing to sue only to those persons or entities whose rights the PUCO has expressly found were violated. In other words, Ameritech maintains that the statutory language unequivocally limits standing to persons or entities directly injured by the violations found by the PUCO. Ameritech asserts that there is no language in R.C. 4905.61 that authorizes a class-action lawsuit for indirect harms allegedly caused by a violation of the rights of some other person or entity. Intermessage counters that this court should not adopt Ameritech's interpretation, because Ameritech seeks to have the court ignore the actual language of the statute—which gives standing to "the person * * * injured"

by a violation—and Ameritech also seeks to have us insert the phrase "whose rights the PUCO expressly finds to have been violated" into the statute.

## ANALYSIS

{¶ 15} As set forth above, Ameritech's first proposition of law asserts that a claimant lacks standing to bring an action under R.C. 4905.61 when the PUCO has never made a determination that that claimant's rights under a specific statute or PUCO order were violated. Because the language of R.C. 4905.61 is controlling, we begin in a familiar place—the principles of statutory construction.

{¶ 16} The interpretation of a statute is a question of law that we review de novo. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9. A court's main objective is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995).

{¶ 17} The intent of the General Assembly must be determined primarily from the language of the statute itself. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000).

{¶ 18} "Where a statute defines terms used therein, such definition controls in the application of the statute * * *." *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 30, 278 N.E.2d 26 (1972), citing *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 241, 85 N.E.2d 379 (1949), and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 275, 267 N.E.2d 781 (1971). Terms that are undefined in a statute are accorded their common, everyday meaning. R.C. 1.42.

{¶ 19} The public-utility treble-damages statute, R.C. 4905.61, provides:

> If any public utility * * * does, or causes to be done, any act or thing prohibited by Chapters 4901., 4903., 4905., 4907., 4921., 4923., and 4927. of the Revised Code, or declared to be unlawful, or omits to do any act or thing required by the provisions of those chapters, or by order of the public utilities commission, the public utility * * * is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of the violation, failure, or omission. Any recovery under this section does not affect a recovery of the state for any penalty provided for in the chapters.

{¶ 20} We have construed this provision to require that before a suit may be brought for treble damages, there must have been a prior declaration by the PUCO that the public utility violated one of the statutes enumerated within R.C. 4905.61 or an order of the PUCO. *Milligan v. Ohio Bell Tel. Co.*, 56 Ohio St.2d 191, 194, 383 N.E.2d 575 (1978). With this understanding in mind, we turn to the question of the statute's construction.

{¶ 21} Ameritech's argument focuses on the legislature's use of the word "the"—instead of a word such as "a" or "any"—in the phrase "the person, firm, or corporation." It contends that the General Assembly's choice to use "the" to precede "person" demonstrates the legislative intent to confer standing only on those persons or entities whose rights the PUCO has expressly found were violated. However, this is not where our focus lies. Instead, resolution of this matter centers upon the phrases "injured thereby" and "in consequence of the violation, failure, or omission." The General Assembly did not define "injure," "thereby," or "consequence" for purposes of R.C. 4905.61. Therefore, we first consider the dictionary definitions of these terms.

**{¶ 22}** "Injure" is defined as "[t]o violate the legal right of another or inflict an actionable wrong." *Black's Law Dictionary* 785 (6th Ed.1990). "Thereby" is defined as "by that," "by that means," "in consequence of that," "connected with that," or "with reference to that." *Webster's Third New International Dictionary* 2372 (2002). "Consequence" is defined as "something that is produced by a cause or follows from a form of necessary connection or from a set of conditions" or "a natural or necessary result." *Id.* at 482.

**{¶ 23}** Applying these definitions, R.C. 4905.61 is susceptible of only one interpretation. "Thereby" and "in consequence of" express that the phrase "the person, firm, or corporation injured" specifically relates to the violation, failure, or omission declared by the PUCO. This reflects the General Assembly's intention to limit the recovery of treble damages to only "the person, firm, or corporation" that was injured as a consequence of the violation declared by the PUCO. In other words, the ambit of "the person, firm, or corporation" that can bring a treble-damages action after legal rights have been violated depends on the terms of the PUCO's finding or order declaring a violation. Therefore, to determine the persons or entities that have standing to bring a treble-damages action under the statute, the relevant order or finding of the PUCO must be examined.

**{¶ 24}** In this matter, the violations found in the *Cellnet* order were related to Ameritech's failure to maintain separate wholesale and retail operations and the corresponding discriminatory impact on nonaffiliated resellers. The PUCO stated in the *Cellnet* order that the duty to maintain separate operations was not solely owed to the PUCO but was necessary to protect unaffiliated resellers from discriminatory and anticompetitive conduct:

"[I]t is necessary that Cellular licensees provide access to * * * cellular service pursuant to terms, conditions, and prices that are universally available on a nondiscriminatory basis to all customers,

8

> affiliated and non-affiliated alike" in order to prevent frustration of the public policy respecting *resale*.

(Emphasis added.)   2001 Ohio PUC LEXIS 18 at \*112-113, quoting *In re Commission's Investigation into Implementation of Sections 4927.01 through 4927.05, Revised Code, as They Relate to Competitive Telecommunications Servs.*, Pub. Util. Comm. No. 89-563-TP-COI, at 22 (Oct. 22, 1993).  Moreover, the PUCO recognized the specific impact to Cellnet that resulted from Ameritech's discriminatory practices:

> [T]he record clearly demonstrates that Cellnet was treated less favorably, at least in some cases, than Ameritech Mobile's retail arm and, in some cases, retail customers.  \* \* \* [T]he Commission points to the comparisons provided relative to the terms, and conditions offered to Cellnet and those extended by Ameritech Mobile retail \* \* \*.   In addition, the Commission considers the comparison between the rates offered to Cellnet to the rates, terms, and conditions reflected in [certain] Cellnet Exhibits.   \* \* \* These differences exist despite the fact that [two of] the Commission's \* \* \* [past] orders [have] required that cellular licensees provide access pursuant to terms, conditions, and prices that are universally available on a nondiscriminatory basis.

*Id.* at \*145-146.

{¶ 25} The *Cellnet* order reveals that pursuant to R.C. 4905.61, the parties injured by the violations—Ameritech's discriminatory behavior—were nonaffiliated cellular-telephone-service resellers in the wholesale market, i.e., direct purchasers of *wholesale* cellular service from Ameritech.  Intermessage was

not a cellular-telephone-service reseller in the wholesale market. Intermessage was a purchaser of cellular service. It was a retail customer of Ameritech that purchased cellular service to back up its alarm systems, and any injuries it suffered were qualitatively different from those found in the *Cellnet* order, meaning that Intermessage's injuries were indirect and remote. The fact that Intermessage simply passed those costs on to its customers does not make Intermessage a reseller in the wholesale market. Intermessage's customers were not purchasing cellular service from Intermessage. Intermessage's customers were purchasing an alarm system with backup features that relied on Ameritech's cellular service. Therefore, Intermessage and the other retail customers of Ameritech in the proposed class that were similarly indirectly injured are unable to bring an action for treble damages pursuant to R.C. 4905.61 based upon the violations found in the *Cellnet* order.

## CONCLUSION

{¶ 26} Because the language of R.C. 4905.61 limits recovery of treble damages to the "person, firm, or corporation" directly injured as a result of the "violation, failure, or omission" found by the PUCO, we hold that Intermessage and members of the proposed class of retail cellular-service subscribers lack standing to bring an action pursuant to R.C. 4905.61. We therefore reverse the judgment of the court of appeals and order the trial court to dismiss this matter.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Hahn, Loeser & Parks, L.L.P., Robert J. Fogarty, Dennis R. Rose, and Royce R. Remington; Gary, Naegele & Theado, L.L.C., and Thomas R. Theado; Randy J. Hart, L.L.P., and Randy J. Hart; Tricarichi & Carnes, L.L.C., and Carla M. Tricarichi; and Law Offices of Mark Griffin and Mark D. Griffin, for appellee.

Tucker Ellis, L.L.P., Irene C. Keyse-Walker, and Benjamin C. Sassé; and Calfee, Halter & Griswold, L.L.P., and James F. Lang, for appellant.

Bricker & Eckler, L.L.P., Anne Marie Sferra, Drew Campbell, and Bryan Smeenk, urging reversal for amici curiae Ohio Counsel of Retail Merchants, Ohio Insurance Institute, Ohio Alliance for Civil Justice, and Ohio Association of Civil Trial Attorneys.

Mac Murray & Shuster, L.L.P., Betty D. Montgomery, and Patrick W. Skilliter, urging reversal for amicus curiae Betty D. Montgomery, former Attorney General of Ohio.

K&L Gates, L.L.P., and J. Nicholas Ranjan; and Donald T. Boyd, urging reversal for amici curiae Chamber of Commerce of the United States of America and Ohio Chamber of Commerce.

Steven T. Nourse, urging reversal for amicus curiae Ohio Power Company, d.b.a. AEP Ohio.

Rocco O. D'Ascenzo, urging reversal for amicus curiae Duke Energy Ohio, Inc.

Joshua R. Eckert, urging reversal for amici curiae Ohio Edison Company, Cleveland Electric Illuminating Company, and Toledo Edison Company.

Michael J. Schuler, urging reversal for amicus curiae Dayton Power and Light Company.

_____