[Cite as *State ex rel. Zamborsky v. Ohio Bd. of Embalmers & Funeral Dirs.*, 2019-Ohio-4016.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.               :
Gregg A. Zamborsky et al.,

                                   :

        Relators-Appellants,

                                   :                  No. 18AP-768
v.                                         (C.P.C. No. 18CV-5023)

                                   :

State of Ohio Board of Embalmers           (ACCELERATED CALENDAR)
and Funeral Directors,                :

        Respondent-Appellee.        :

---

D E C I S I O N

Rendered on September 30, 2019

---

**On brief:** *Vasvari & Zimmerman*, and *Raymond V. Vasvari, Jr.*, for appellants. **Argued:** *Raymond V. Vasvari, Jr.*

**On brief:** [*Dave Yost*], Attorney General, and *Christie Limbert*, for appellee. **Argued:** *Christie Limbert.*

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Relators-appellants, Gregg A. Zamborsky and Douglas E. Wilson, appeal a judgment of the Franklin County Court of Common Pleas that dismissed the complaint for a writ of mandamus filed against respondent-appellee, the State of Ohio Board of Embalmers and Funeral Directors ("Board"). For the following reasons, we affirm that judgment.

{¶ 2} Zamborsky and Wilson are both funeral directors licensed by the Board. Relators filed their mandamus complaint against the Board on June 13, 2018. In the complaint, relators alleged that Ohio funeral homes routinely employ or retain individuals

who are not licensed as funeral directors to perform services that only licensed funeral directors may perform. The illicit services performed by these unlicensed individuals include the solicitation for sale and selling of preneed funeral contracts for funeral services.

{¶ 3} A "preneed funeral contract" is

> a written agreement, contract, or series of contracts to sell or otherwise provide any funeral services, funeral goods, or any combination thereof to be used in connection with the funeral or final disposition of a dead human body, where payment for the goods or services is made * * * prior to the death of the person purchasing the goods or services or for whom the goods or services are purchased.

R.C. 4717.01(T). Only a licensed funeral director may sell a preneed funeral contract that includes funeral services, absent application of a specific statutory exemption. R.C. 4717.31(A). A licensed insurance agent may sell, solicit, or negotiate the sale of an insurance policy or annuity that will be used to fund a preneed funeral contract, but, in doing so, the agent may not offer advice or recommendations about funeral services and may not discuss the advantages or disadvantages of any funeral service. R.C. 4717.31(B).

{¶ 4} Pursuant to R.C. 4717.31(H), the Board has the duty to administer and enforce the statutory provisions concerning the sale of preneed funeral contracts. Additionally, under R.C. 4717.03(G), "on receiving a written complaint from any person whose identity is made known to the board * * *, the board shall investigate the acts or practices of any person holding or claiming to hold a license, permit, or registration under this chapter that, if proven to have occurred, would violate [R.C. Chapter 4717] or any rules adopted under it."

{¶ 5} In 2016, Zamborsky filed complaints with the Board alleging that, in connection with the sale of preneed funeral contracts, five licensed funeral homes were allowing individuals without a funeral director license to provide funeral services, solicit for the purchase of funeral services, offer advice regarding funeral services, and/or discuss the advantages and disadvantages of particular funeral services. According to relators' mandamus complaint:

> 31. Notwithstanding the Board's statutory mandate under O.R.C. §§ 4717.03(G) and 4717.31 to investigate alleged acts or practices of non-licensed funeral home staff members providing or advising on funeral services in connection with the

sale of a pre-need funeral contract, the Board abdicated and failed to perform its statutory obligation and did not conduct any such investigation.

32. Instead, the Board only sent a letter to the malefactors informing them of the allegations, requesting a letter response. Once a letter response was submitted denying the allegations, the Board closed each respective complaint without investigation with a sham finding that no reasonable cause existed to believe that the funeral home violated Chapter 4717 of the Ohio Revised Code or any of the Board's rules promulgated thereunder.

33. The Board did not undertake any investigation as required and contemplated by O.R.C. 4717.03(G). Instead, it undertook a sham process of providing perfunctory notice, receiving denial of the claimed illegal acts and closing the file, essentially rubber stamping, endorsing and allowing unfettered illegal activity in violation of O.R.C. 4717.31.

34. The Board refuses to investigate and to penalize this ongoing illegal activity within the funeral industry. In so failing to act, the Board refuses to carry out its statutory mandate under O.R.C. 4717.03(G) and knowingly fails to uphold the standards of the profession.

(Compl. at ¶ 31-34.)

{¶ 6} Based on the allegations in the complaint, relators requested that the court issue a writ of mandamus ordering the Board "to investigate all claims against funeral home owners and operators of violations of O.R.C. § 4717.31," including the claims made by Zamborsky against the five funeral homes "for delegating to and allowing unlicensed staff members to provide funeral arranging and funeral advising services to customers." (Compl. at 11, ¶ b.)

{¶ 7} In response to the complaint, the Board moved to dismiss pursuant to Civ.R. 12(B)(6) for failure to state a claim. In relevant part, the Board argued that the trial court could not grant relators a writ ordering the Board to investigate because, according to the complaint, the Board had already investigated Zamborsky's complaints. In a judgment issued September 17, 2018, the trial court granted the Board's motion and dismissed the complaint.

{¶ 8}    Relators now appeal the September 17, 2018 judgment, and they assign the following errors:

> [1.]    The trial court committed prejudicial error when it dismissed this case, holding that the Petition failed to state a claim upon which relief could be granted.  The trial court found that the Petition failed to plead facts sufficient to claim the Respondent Board had failed to investigate unlicensed persons acting as funeral directors, in violation of its duty to investigate under Revised Code §4717.03(G), both because the Board had conducted a cursory investigation which the trial court wrongly judged to be adequate and wrongly concluded the Relators had no clear legal right to demand more than that.
>
> [2.]    The trial court committed prejudicial error when, as an alternative basis for dismissing this action, it held that the Relators had failed to plead a beneficial interest in the outcome of this case sufficient to support their standing to sue.

{¶ 9}    By their first assignment of error, relators argue that the trial court erred in dismissing their mandamus complaint under Civ.R. 12(B)(6) because they pleaded facts establishing that the Board failed to investigate Zamborsky's complaints.  We disagree.

{¶ 10} Pursuant to Civ.R. 12(B)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Such a motion tests the sufficiency of the complaint.  *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11.  Appellate courts review de novo a lower court's dismissal of a mandamus complaint under Civ.R. 12(B)(6).  *State ex rel. Washington v. D'Apolito*, 156 Ohio St.3d 77, 2018-Ohio-5135, ¶ 7.  To affirm the dismissal of a mandamus complaint pursuant to Civ.R. 12(B)(6), an appellate court must conclude that the relator can prove no set of facts entitling it to mandamus relief.  *State ex rel. McKinney v. Schmenk*, 152 Ohio St.3d 70, 2017-Ohio-9183, ¶ 8.  In reviewing the dismissal, an appellate court presumes that all factual allegations in the complaint are true and draws all reasonable inferences in the nonmoving party's favor.  *Washington* at ¶ 7.  However, the presumption of truthfulness does not extend to conclusions unsupported by factual allegations.  *Cramer v. Javid*, 10th Dist. No. 10AP-199, 2010-Ohio-5967, ¶ 7; *Guess v. Wilkinson*, 123 Ohio App.3d 430, 434 (10th Dist.1997).  Conclusions included among, but not supported by, factual allegations are not considered admitted and are not sufficient to withstand a motion to dismiss.  *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994); *Silverman v. Roetzel & Andress,*

*L.P.A.*, 168 Ohio App.3d 715, 2006-Ohio-4785, ¶ 6 (10th Dist.); *Doe v. Malkov*, 10th Dist. No. 02AP-90, 2002-Ohio-7358, ¶ 5.

{¶ 11} To be entitled to a writ of mandamus, a relator must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Walters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 6. "A mandamus action is thus appropriate where there is a legal basis to compel a public entity to perform its duties under the law." *State ex rel. GMC v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 9. Mandamus, however, will not compel the performance of an act that has already been performed. *State ex rel. ACLU v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, ¶ 28. Additionally, mandamus will not compel the general observance of laws in the future. *Id.* at ¶ 27.

{¶ 12} In the case at bar, relators sought a writ of mandamus compelling the Board to investigate Zamborsky's complaints that funeral homes allowed unlicensed staff members to advise customers about funeral services in connection with the sale of preneed funeral contracts. Relators claim that the Board has a clear legal duty to investigate Zamborsky's complaints pursuant to R.C. 4717.03(G), which states that, upon receiving a complaint, "the [B]oard shall investigate the acts or practices of" any license, permit, or registration holder "that, if proven to have occurred, would violate" any provision of R.C. Chapter 4717.

{¶ 13} The Board does not deny its statutory obligation to investigate Zamborsky's complaints. The Board, instead, contends that the factual allegations in the mandamus complaint establish that it has conducted the necessary investigation. In support of this contention, the Board points to the allegations in the complaint that: (1) the Board sent each funeral home "a letter * * * informing [it] of the allegations" against it and "requesting a letter response," Compl. at ¶ 32, (2) each funeral home responded and denied the allegations, and (3) the Board then closed each complaint with a finding that "no reasonable cause existed to believe that the funeral home [had] violated Chapter 4717 of the Ohio Revised Code or any of the Board's rules promulgated thereunder," Compl. at ¶ 32.

{¶ 14} In response, relators direct this court to the assertions in the complaint that the Board did not investigate Zamborsky's complaints. These assertions include: (1) "the

Board closed each respective complaint without investigation," Compl. at ¶ 32, (2) "[t]he Board did not undertake any investigation as required and contemplated by O.R.C. 4717.03(G)," Compl. at ¶ 33, and (3) "[t]he Board refuses to investigate and to penalize this ongoing illegal activity within the funeral industry," Compl. at ¶ 34. Based on these assertions, relators argue that we must conclude that they pleaded sufficient factual allegations to avoid dismissal on Civ.R. 12(B)(6) grounds.

{¶ 15} While R.C. 4717.03(G) requires the Board to "investigate" complaints, it does not specify what constitutes an investigation. Absent an express statutory definition, the words contained in a statute are accorded their common, everyday meaning. *Satterfield v. Ameritech Mobile Communications, Inc.*, 155 Ohio St.3d 463, 2018-Ohio-5023, ¶ 18. The ordinary meaning of "investigate" is "to observe or study closely: inquire into systematically: EXAMINE, SCRUTINIZE * * * *specif*[ically]: to subject to an official probe." (Emphasis sic.) *Webster's Third New International Dictionary* 1189 (1966). Given the breadth of this definition, we conclude that the Board investigates a complaint when it sends a letter to the accused detailing the allegations against it, requires a response to those allegations, and reaches a conclusion based on those responses. The factual allegations in the complaint, therefore, establish that the Board investigated Zamborsky's complaints.

{¶ 16} We recognize that relators repeatedly asserted in their mandamus complaint that no investigation occurred into Zamborsky's complaints to the Board. These assertions, however, are conclusions contradicted by the factual allegations setting forth the actions the Board undertook to investigate. Consequently, relators' assertions do not preclude the dismissal of the mandamus complaint.

{¶ 17} Finally, relators argue that we must allow them to contest, through mandamus, the Board's allegedly cursory performance of its duty to investigate. Conceivably, relators could have pursued a writ of mandamus by alleging that the Board abused its discretion in failing to conduct a more thorough investigation. *See GMC*, 117 Ohio St.3d 480, 2008-Ohio-1593, at ¶ 9 ("[A] writ of mandamus may lie if the public entity has abused its discretion in carrying out its duties."); *see also State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, ¶ 27 ("Although a writ of mandamus will not control [a nonjudicial public entity's or official's] exercise of [its] discretion, it will correct an abuse of that discretion."). Relators, however, instead chose to

seek mandamus based on the assertion that the Board did not investigate at all. Because the factual allegations in the complaint establish that an investigation already occurred, the trial court did not err in dismissing relators' complaint. Accordingly, we overrule relators' first assignment of error.

{¶ 18} By relators' second assignment of error, they challenge the trial court's alternative rationale for granting the Board's motion to dismiss. We have concluded that the trial court did not err in dismissing relators' complaint because it failed to state a claim. We, therefore, find the second assignment of error moot.

{¶ 19} For the foregoing reasons, we overrule relators' first assignment of error, which moots relators' second assignment of error. We affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

––––––––––––––––