DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant Robert M. Robertson[1] appeals from his convictions in the Summit County Court of Common Pleas of two counts of rape, with specifications of force, and two counts of gross sexual imposition. This Court affirms.
 I.
Robertson lived in a trailer park in Springfield Township, Summit County, Ohio. In 1995, Patricia Mook moved into the trailer next door to Robertson's trailer. Also living with Patricia were her son Keith, her daughter Keirston, and Keirston's son Tyler. Robertson became closely involved with the Mook family and had a grandfatherly relationship with Tyler, who called Robertson "Bob."
One day in September 1997, when Tyler was three years old, he was with Patricia in their trailer. Tyler pulled down his pants and placed his penis on a coffee table. Patricia told him that he should not remove his pants in that manner; Tyler then laughed and ran out of the room. Soon after he exposed himself, Tyler approached Patricia and told her "to suck his pee-pee." Patricia asked where he learned this language, and he said, "Bob taught me." Patricia did not immediately report Tyler's behavior or comments to Keirston.
On the evening of October 5, 1997, Patricia told Keirston that Tyler had said something that she needed to hear. After they entered Tyler's bedroom, Patricia told Tyler to repeat what he had said to her. Tyler then said, "Suck my pee-pee." Keirston asked where he had learned that, and he replied, "Bob." Keirston asked what else Bob had taught him. Tyler said that Bob put his pee-pee on Tyler's pee-pee, that Bob licked his pee-pee, and that he licked Bob's pee-pee. Tyler then proceeded to lick a bedpost.
Keirston contacted the Springfield Township Police Department on October 7, 1997. On October 8, 1997, Keirston and Tyler went to the police station and spoke with Detective Garry Moneypenny and Officer Denise Johnstonbaugh. Detective Moneypenny interviewed Tyler with Keirston and Officer Johnstonbaugh present. During the course of the interview, Tyler related that Bob had taken his (Tyler's) pants off and that Bob had taken his own pants off. Tyler also alleged several instances of sexual contact between himself and Bob, including "Bob touched my pee-pee[,]" "Bob puts his pee-pee on my pee-pee[,]" and "Bob mouths my pee-pee." Tyler also said, "It doesn't taste good[,]" but was unclear as to what did not taste good.
On October 9, 1997, Detective Moneypenny and Officer Johnstonbaugh interviewed Robertson in his home. The officers told him that allegations had been made by Tyler and that they wanted to ask him about those allegations. Robertson never asked what the specific allegations were. During the course of the interview, Robertson stated that he never raped Tyler. Soon thereafter, he admitted that, on one occasion in August or September 1997, he had an "uncontrollable urge" and touched Tyler's penis briefly. Robertson then gave a written statement, consisting of questions written by Detective Moneypenny and answers written by Robertson. Robertson then signed the statement. The officers left without arresting him.
The next day, Officer Johnstonbaugh and another police officer returned to arrest Robertson. At that time, Robertson denied having ever touched Tyler. He later made a second written statement that disavowed the written statement given the day before to Detective Moneypenny.
On October 28, 1997, Robertson was indicted on two counts of rape, in violation of R.C. 2907.02(A)(1)(b), with specifications of force, and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). He entered a plea of not guilty to all four counts.
On February 24, 1998, the prosecution filed a notice of intent to introduce statements made by Tyler under Evid.R. 807. A hearing was held on March 9 and 23, 1998, on the subject of whether various witnesses could relate Tyler's statements about his behavior and Robertson's involvement in that behavior. After taking the testimony of several witnesses, the trial court found that, under the tests outlined in Evid.R. 807, the testimony regarding Tyler's statements was admissible.
The matter was tried to a jury from March 30, 1998, to April 6, 1998. After deliberating, the jury found Robertson guilty on all counts. The trial court then sentenced Robertson accordingly.
Robertson timely appeals, asserting two assignments of error.
 II.
First Assignment of Error
 THE TRIAL COURT ERRED IN ALLOWING OUT-OF-COURT STATEMENTS BY AN ALLEGED CHILD VICTIM OF SEXUAL ABUSE UNDER EVIDENCE RULE 807 WHERE (A) THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH 1) PARTICULARIZED GUARANTEES OF TRUSTWORTHINESS OF SUCH STATEMENTS; 2) INDEPENDENT EVIDENCE OF THE CRIMES AS ALLEGED; AND 3) THAT THE TESTIMONY OF THE CHILD WAS NOT REASONABLY OBTAINABLE AT TRIAL; (B) IMPROPER EVIDENCE WAS USED TO DETERMINE THE TRUSTWORTHINESS OF THE CHILD'S OUT-OF-COURT STATEMENTS; AND C) THE TRIAL COURT FAILED TO MAKE NUMEROUS MANDATORY FINDINGS ON THE RECORD TO ALLOW SUCH USE OF THE ALLEGED CHILD VICTIM'S STATEMENTS WITHOUT HIS TESTIMONY AT TRIAL.
Robertson argues in his first assignment of error that the trial court erred by ruling that the testimony relating Tyler's statements was admissible under Evid.R. 807. He contends that the trial court's findings were not supported by the evidence presented at the hearing on this issue. This Court disagrees.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Evid.R. 807 states in relevant part:
 (A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:
 (1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid. R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.
 (2) The child's testimony is not reasonably obtainable by the proponent of the statement.
 (3) There is independent proof of the sexual act or act of physical violence.
 (4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.
Prior to admitting evidence under this rule, the trial court must hold a hearing and must find on the record that each of the four requirements of Evid.R. 807(A) have been met, with the reasons or bases for such findings. Evid.R. 807(C); State v. Said (1994),71 Ohio St.3d 473, 477. Each of these four requirements will be analyzed separately.
 A. Particularized Guarantees of Trustworthiness
First, the trial court must find that the circumstances demonstrate that there are particularized guarantees that the child's statement is trustworthy. These include, but are not limited to,
 spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement.
Evid.R. 807(A)(1). A determination as to a statement's trustworthiness cannot be bolstered by independent evidence of a sexual act, because such evidence is not to be considered in this part of the analysis. Id.
The statements at issue in the case at bar were made by Tyler to Patricia, Keirston, Detective Moneypenny, and Patrick Mullen, the then-boyfriend of Keirston, who all testified at the hearing. At the hearing on the admissibility of the evidence, Patricia testified that Tyler had told her to "suck his pee-pee" and that Bob had taught this behavior to him. Keirston testified that she heard similar statements from Tyler; she also stated that on one occasion Tyler grabbed his genital region and said "dick, dick." Patrick Mullen testified that he heard Tyler say "suck my pee-pee" and that he witnessed Tyler grabbing his genital region and saying "dick." Detective Moneypenny, testifying about his interview with Tyler, stated that Tyler had mentioned several instances of sexual acts involving Bob, such as Bob touching his pee-pee to Tyler's pee-pee, Bob mouthing Tyler's pee-pee, and Tyler mouthing Bob's pee-pee.
This Court concludes that there was sufficient indicia of trustworthiness to support the trial court's findings. Tyler's statements consistently referred only to Bob and to what Tyler and Bob did. Tyler used terminology that one would not normally expect a three-year-old to employ, such as telling his grandmother to suck his pee-pee. Tyler's statements were made in September and October of 1997, within one or two months of when the crimes were alleged to have occurred. The statements appeared to be made with some degree of spontaneity, especially the first statement made to Patricia, Tyler's grandmother, and the manner in which other statements were elicited was not leading or unduly suggestive. Additionally, there is nothing in the record of the hearing that suggests that Tyler had a motive for fabricating the statements.[2]
 B. Testimony Not Reasonably Obtainable
In making its determination under Evid.R. 807, the trial court was also required to find that Tyler's testimony was not reasonably obtainable by the prosecution. Evid.R. 807(B) states in relevant part:
 The child's testimony is "not reasonably obtainable by the proponent of the statement" under division (A)(2) of this rule only if one or more of the following apply:
* * *
(2) The court finds all of the following:
(a) The child is absent from the trial or hearing;
 (b) The proponent of the statement has been unable to procure the child's attendance or testimony by process or other reasonable means despite a good faith effort to do so;
 (c) It is probable that the proponent would be unable to procure the child's testimony or attendance if the trial or hearing were delayed for a reasonable time.
During the hearing, Tyler was presented as a witness in open court. Several people attempted to question him about the statements he made regarding Bob, but Tyler was uncooperative. A reading of the record paints a picture of a child who was distracted by a microphone and other things and could not sit still, even at one point running around in the courtroom. By the end of his appearance at the hearing, Tyler had become obstinate and disruptive. The trial court found that Tyler was absent under the rule:
 I find that [Tyler] is not available for testimony on the following basis, both in chambers and in court efforts were made to focus the child on the testimony. The child was very hyperactive, playing with the microphone here in court, jumping up and down, walking around; the same activity was presented in chambers.
* * *
 I find that the availability issue is not with respect to physical presence; obviously we can pick the child up and bring the child to court. The real issue is whether or not a child of that age will be able to give testimony about the events at issue, and the court's finding is he is not reasonably available.
This Court agrees with the trial court's determination that, for all intents and purposes, Tyler was "absent from the trial." Evid.R. 807(B)(2)(a). He was unable to behave in a manner required for a court proceeding, and similar conduct in a trial would impede the proceedings. While Evid.R. 807(B)(2) does not specifically address whether a child who would disrupt court proceedings is "absent," this Court finds that the facts of the case at bar fit within the rule.
Therefore, the record demonstrates that Tyler was absent from the trial. The record further shows that the prosecution would not have been able to procure Tyler's attendance at trial because of his behavior and that a reasonable delay would not have allowed the prosecution to procure Tyler's testimony. As such, the trial court's findings complied with the second requirement of Evid.R. 807(A).
 C. Independent Proof
The third requirement of Evid.R. 807(A) is that there must be independent proof of the sexual act. The record before this Court discloses the following: At the hearing, Detective Moneypenny testified that Robertson confessed to having touched Tyler's penis once, as a result of an "uncontrollable urge" on Robertson's part. There was also testimony by Keirston, Patricia, and Patrick Mullen regarding Tyler's behavior after September 1997. They testified that Tyler was more aggressive, that he had nightmares, and that he exhibited various sexual behaviors, including, on separate occasions, presenting his groin to the face of these three people, while the adults were in a prone position, and insisting that they suck his pee-pee. Charel Kohl, a psychologist, testified that Tyler's behavior was indicative of sexual abuse.
In State v. Von Steeg (Apr. 30, 1997), Summit App. No. 17930, unreported, the defendant was convicted of having performed cunnilingus on a girlfriend's young daughter. An aunt of the child victim testified that on one occasion, the child victim kissed a female cousin between the legs. A social worker testified that this behavior was an indication of sexual abuse. This Court found that the testimony of these two witnesses constituted independent proof of the sexual act involved.
Similarly, this Court concludes that the testimony presented regarding Tyler's sexual behavior constitutes independent proof of the sexual acts in this case. Tyler's sexual behavior, aggressiveness, and disturbed sleep sufficiently indicate sexual abuse to meet the requirements of the rule. Robertson's confession also is independent proof under Evid.R. 807(A)(3). SeeIn re Bright (July 31, 1995), Clinton App. No. CA94-10-027, unreported (statement made by defendant to caseworker regarding fellatio with a child constituted independent proof).
 D. Notice of Intent to Use Statements
The final requirement is that the trial court must find that the proponent of the statements must have given notice at least ten days before the hearing. Evid.R. 807(A)(4). The notice must state "the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness." Id.
In the case at bar, the prosecution served its notice on February 24, 1998. The hearing was held on March 9, 1998, more than ten days after the notice was served. The notice outlined the testimony of Detective Moneypenny, Patricia, and Keirston and met the requirements for the notice. The fourth requirement of Evid.R. 807(A) was clearly met in this case.[3]
 E. Summary
The record before this Court supports the trial court's findings that Tyler's statements were admissible through the testimony of the other witnesses presented under Evid.R. 807. This Court cannot say that the trial court's ruling constituted an abuse of discretion. The first assignment of error is overruled.
III. Second Assignment of Error
 THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO ESTABLISH THE ELEMENT OF FORCE FOR APPELLANT'S CONVICTIONS ON TWO COUNTS OF RAPE WITH FORCE.
In the second assignment of error, Robertson argues that his convictions on two counts of rape were not supported by sufficient evidence. Robertson was convicted of two counts of rape, in violation of R.C. 2907.02(A)(1)(b). The jury also found that he compelled Tyler to submit by force or threat of force, mandating imprisonment for life on those counts under R.C. 2907.02(B). Robertson contends that there was no evidence of force to support the jury's finding. This Court disagrees.
"The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Statev. Leggett (Oct. 29, 1997), Summit App. No. 18303, unreported. This Court must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
R.C. 2907.02(A)(1)(b) states: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the person." Under R.C. 2907.02(B), "[i]f the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus. "A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C.2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." State v. Dye
(1998), 82 Ohio St.3d 323, syllabus.
During the trial, Keirston testified that Tyler said that "one day [when] he was at Bob's trailer, that he hid under the bed in Bob's bedroom, because he didn't want Bob to get him." She also testified that Tyler told her "that Bob said he was going to cut his pee-pee off." Detective Moneypenny testified that Tyler told him that Bob removed his (Tyler's) pants.
This Court concludes that, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence of force to support the jury's finding. Robertson was a father figure to Tyler and was a frequent babysitter of Tyler, placing him in a position of authority over Tyler. There was a great disparity between Tyler and Robertson in age (three years old and seventy-eight years old) and size. Robertson removed Tyler's pants, see Eskridge, 38 Ohio St.3d at 58 (defendant removed victim's panties), and threatened to cut off Tyler's penis. Tyler also hid from Robertson. Given Robertson's position of authority, the evidence supported a finding that Tyler was compelled by force to submit to Robertson. The second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR, FOR THE COURT
SLABY, J., CONCURS.
BAIRD, P.J., CONCURS IN JUDGMENT ONLY.
[1] Prior to oral argument in this appeal, Robertson died. Pursuant to State v. McGettrick (1987), 31 Ohio St.3d 138, paragraph two of the syllabus, Robertson's appellate counsel, Nicholas Swyrydenko, was substituted as the party appellant-defendant.
[2] The trial court also included Robertson's confession in its findings on trustworthiness. Consideration of such independent evidence is prohibited by Evid.R. 807(A)(1); however, because there was sufficient evidence other than the confession to support the trustworthiness finding, such error is harmless. See Crim.R. 52(A); see, also, Ojalvo v. Bd. of Trustees of Ohio State Univ.
(1984), 12 Ohio St.3d 230, 232-33 ("A single analytical error by the trial court, in an otherwise correct analysis, might not necessarily constitute a sufficient basis to overturn the decision of the court under established tests for abuse of discretion.").
[3] The trial court's finding in this regard was less than clear. However, the record demonstrates that there were no defects in the prosecution's notice, and no objections were raised with regards to the notice. As such, any error in the trial court's findings as to notice is harmless.