[Cite as *State v. Fitzgerald*, 2024-Ohio-1608.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 2023-CA-44 |
| v. | : | Trial Court Case No. 22-CR-0365(A) |
| ZAHEEM FITZGERALD | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 26, 2024

. . . . . . . . . . .

STEPHEN T. WOLFE, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Zaheem Fitzgerald appeals from his conviction in the Clark County Court of Common Pleas on three counts of felonious assault, felonies of the second degree. He claims that the trial court erred in denying his presentence motion to withdraw his guilty pleas and in sentencing him to a maximum sentence and consecutive sentences. For

the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} At approximately 1:46 a.m. on January 15, 2022, Fitzgerald and others drove in two vehicles to a residence on South York Street in Springfield and fired multiple shots into the home. Fitzgerald was the driver of one of the vehicles. Three individuals, including a 13-year-old child, were struck by bullets. During the subsequent investigation, the police collected 9 mm, .40 caliber, .45 caliber, .223 caliber, and 5.56 caliber pistol and rifle casings from the scene.

{¶ 3} On April 26, 2022, Fitzgerald was indicted (along with five of his co-defendants) on improperly discharging a firearm at or into a habitation, discharging a firearm on or near prohibited premises, improper handling of firearms in a motor vehicle, having weapons while under disability, and three counts of felonious assault. Several counts included firearm specifications.

{¶ 4} Six months later, on October 27, 2022, Fitzgerald reached a plea agreement with the State. Under the terms of the agreement, Fitzgerald would plead guilty to the three counts of felonious assault and would testify truthfully against his co-defendants. In exchange, the State would dismiss the other charges and all specifications. The parties also agreed to a presentence investigation. Fitzgerald stated at the plea hearing that he understood the terms of the plea agreement and that he was entering his pleas voluntarily. After a Crim.R. 11 colloquy, the trial court accepted Fitzgerald's guilty pleas.

{¶ 5} Because Fitzgerald had agreed to testify against his co-defendants, the trial court delayed sentencing until those cases were resolved. Approximately one month

after entering his pleas, Fitzgerald wrote a letter to the court expressing that he was remorseful and took "full responsibility for [his] actions." He stated that he was "around the wrong people at the wrong time." The record indicates that Fitzgerald testified against one of his co-defendants in February 2023. Several of his co-defendants entered guilty pleas.

{¶ 6} In April 2023, defense counsel sought to withdraw due to a breakdown in communication with Fitzgerald. Approximately a month later, the trial court overruled the motion without a hearing.

{¶ 7} On July 12, 2023, Fitzgerald moved to withdraw his guilty pleas. Defense counsel wrote that Fitzgerald had expressed his belief that counsel was ineffective in negotiating his plea agreement and that he had entered his pleas under duress. The State opposed the motion, characterizing Fitzgerald's request as a mere change of heart. After a hearing on August 4, 2023, the trial court overruled the motion.

{¶ 8} The trial court sentenced Fitzgerald to a maximum indefinite sentence of 8 to 12 years on Count 4 and to indefinite sentences of 7 to 10.5 years on the other two felonious assault counts. The court ordered the sentences to run consecutively for an aggregate term of 22 to 26 years in prison.

{¶ 9} Fitzgerald appeals from his convictions, raising three assignments of error. We will address them in an order that facilitates our analysis.

## II. Presentence Motion to Withdraw Pleas

{¶ 10} In his first assignment of error, Fitzgerald claims that the trial court erred when it denied his motion to withdraw his guilty pleas prior to sentencing.

{¶ 11} Crim.R. 32.1 states that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A presentence motion to withdraw a plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992); *State v. Barnes*, 172 Ohio St.3d 64, 2022-Ohio-4486, 222 N.E.3d 537, ¶ 21. "This standard makes clear that when a defendant pleads guilty to one or more crimes and later wants to withdraw that plea before he has been sentenced, the trial court should permit him to withdraw his plea. This is the presumption from which all other considerations must start." *Barnes* at ¶ 21. However, a defendant does not have an "absolute right" to withdraw his or her plea, even when a motion to withdraw is made before sentencing. *Xie* at paragraph one of the syllabus; *Barnes* at ¶ 13. Rather, the trial court retains the discretion to decide whether to grant a presentence motion to withdraw a guilty plea. *Xie* at paragraph two of the syllabus.

{¶ 12} We review decisions on a motion to withdraw a guilty plea for an abuse of discretion. *State v. Greenlee*, 2d Dist. Montgomery Nos. 28467, 28468, 2020-Ohio-2957, ¶ 11. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶ 13} In evaluating whether the trial court abused its discretion in denying a presentence motion to withdraw a plea, we have adopted the nine factors set forth in *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995), *overruled on*

*other grounds*, *State v. Sims*, 2017-Ohio-8379, 99 N.E.3d 1056 (1st Dist.):

> (1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea.

Consideration of the factors involves a balancing test, and no single factor is dispositive. *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11.

**{¶ 14}** The ultimate question is whether there is a "reasonable and legitimate basis for the withdrawal of the plea." *State v. Becraft*, 2017-Ohio-1464, 89 N.E.3d 218, ¶ 54 (2d Dist.), quoting *Xie* at 584. A change of heart is not a legitimate basis for withdrawing a guilty plea when the defendant understood, at the time the plea was entered, the maximum and minimum sentences that could be imposed and that no particular sentence had been promised. *State v. Thomas*, 2d Dist. Greene No. 2006-CA-57, 2007-Ohio-443, ¶ 11.

**{¶ 15}** Fitzgerald told the trial court at the hearing on his motion to withdraw his pleas that, when he agreed to the State's offer, he did not understand the plea deal or what a presentence investigation involved. He explained that he did not know that he

could ask for an agreed sentence and did not realize that he was admitting to hurting someone. Fitzgerald asserted that he did not fire a weapon. Fitzgerald further indicated that he had "been doing a little research," and he stated that he was drunk when the offenses occurred, which made him "unaware of everything that was going on and what was going to happen." Fitzgerald further explained that he decided to accept the State's plea offer because he thought "that was last deal I was getting" and that he would not get a better offer with "people lying on me." He concluded, saying, "But I actually did research and now I know that there's actually a five-year, and I would like to show my innocence, and I'd like to go to trial."

{¶ 16} Replying to Fitzgerald's argument, the State emphasized that he had highly competent counsel, that he had met with prosecutors and made a proffer before accepting the plea offer, that he had agreed to the terms at the plea hearing and testified at a co-defendant's trial, that his motion was untimely, and that granting the motion would be highly prejudicial to the victims in this case. The prosecutor argued that Fitzgerald had had a change of heart and had not presented a legitimate basis to withdraw his plea.

{¶ 17} Fitzgerald responded that the delay in filing his motion was caused by his defense counsel. He stated that he had asked his attorney to file a motion to withdraw his pleas along with a motion to withdraw as counsel, but counsel had not filed it. Fitzgerald reiterated that he did not understand the plea deal when it was presented, that he was "under duress" when he accepted the offer, and that he wanted to prove his innocence because he had never fired a weapon.

{¶ 18} The State countered that no one forced or pressured Fitzgerald to accept

the plea offer. Upon questioning by the court, the State indicated that it believed Fitzgerald not only fired a weapon but was complicit in the planning of the drive-by shooting.

{¶ 19} Fitzgerald denied being involved in the planning of the shooting. He then had the following exchange with the court:

THE COURT: What were you doing with all those guys that night when this happened?

THE DEFENDANT: To be honest, I lived at that house for almost a year. I came back for a vacation and I just been staying there and so happened to be there when a fight happened at a bowling alley and the house got shot up, so I was there with them, and just –

THE COURT: What were you doing the night that the house got shot up? Why were you with all of those guys at that house?

THE DEFENDANT: They needed a driver.

THE COURT: So you drove?

THE DEFENDANT: Yeah, they needed a driver because everybody else was drunk.

THE COURT: But you –

THE DEFENDANT: I was drunk, too, but –

THE COURT: You knew what they were going to do, right? You –

THE DEFENDANT: No, no, I didn't know. Nobody spoke of doing that. The plans that night, we were to do something totally different, to party.

And keeping guns is like common or like familiar with, like these streets, everybody keeps guns.

THE COURT: So you knew there were people in your car, the car you were driving that had guns, right?

THE DEFENDANT: Yes.

THE COURT: So that's a crime in and of itself?

THE DEFENDANT: That is a crime in itself.

THE COURT: So you're not innocent.

THE DEFENDANT: I never said I was innocent to driving with people with guns. I just said I'm innocent to – you feel what I'm saying, I didn't hurt nobody. I didn't want to hurt nobody. I never planned to hurt nobody. I never knew that they lived there.

THE COURT: Why did you plead guilty? Why did you plead guilty to three counts of felonious assault?

THE DEFENDANT: Because – I really don't know. I don't know what to say to that for real. I was just scared at the time. I didn't know. I heard 56 years, and I was just under like, it was under, it was just that paper being just here in front of me, right here in the same seat that I'm in right now, for five minutes.

It was just like either sign this paper or go to trial tomorrow and testify or you go down for 56 years. That's what I was told. And to be honest, I didn't know if I could beat somebody testifying and lying against me

because how can you prove somebody is lying if there's no evidence to prove that it wasn't done?

So it was like tell the – I'm like, I don't know, I was just, I don't know. I fold under pressure sometimes, so I just signed it thinking that, you know, she said I'll get the lowest end of this, I don't know, but –

THE COURT: Okay. I'm going to issue a written decision.

Motion to Withdraw Plea Tr. at 11-14.

{¶ 20} In its decision denying Fitzgerald's motion, the trial court found that Fitzgerald was represented by competent counsel throughout the case. The court indicated that he was afforded a plea hearing in compliance with Crim.R. 11, where he expressed that he had not been pressured to enter his plea agreement and that he was doing so voluntarily. The court provided Fitzgerald a full hearing on his motion to withdraw his plea, and it indicated that it had reviewed the plea hearing transcript in deciding the motion. The court found Fitzgerald's claim of duress "carr[ied] no weight" and that his other claims lacked credibility. As to his claim of innocence, the trial court noted that Fitzgerald's claim was based on his assertion that he did not fire shots at the house. The court found that Fitzgerald "could have chosen to present this self-serving statement to a jury last fall, but he calculated the risk of being contradicted with State's evidence and/or exposing himself to accomplice liability, and instead chose to accept the plea agreement and plead guilty. It seems that he now has a change of heart * * *." The court concluded that Fitzgerald did not present a legitimate basis to withdraw his guilty plea.

{¶ 21} On appeal, Fitzgerald contends that the trial court abused its discretion in determining that he was represented by highly competent counsel, given her delay in filing his motion to withdraw his plea. He states that the timeliness factor should be considered in light of counsel's conduct. Fitzgerald further argues that the court did not give fair consideration to his motion, as the court's questions during the hearing indicated that the court considered him to be guilty. He emphasizes that he did not understand the plea and raised actual innocence at the hearing, and he claimed that his interest in avoiding a lengthy prison sentence should outweigh any prejudice to the State.

{¶ 22} We find no abuse of discretion in the trial court's ruling. On this record, the trial court reasonably concluded that Fitzgerald was represented by highly competent counsel and received a full Crim.R. 11 hearing before entering his pleas. Fitzgerald, with counsel, also received a full hearing on the motion to withdraw his pleas, and the court's decision reflects that it gave full and fair consideration to the motion. Although Fitzgerald apparently asked defense counsel to file the motion to withdraw his plea in April 2023, when she sought to withdraw as counsel, Fitzgerald made that request approximately six months after he had entered his pleas and after he had testified in his co-defendant's trial.

{¶ 23} At the hearing, Fitzgerald spoke at length about the basis for his motion. He did not express that he did not understand the nature of the charges, nor did he say that he did not understand the potential penalties involved. Rather, he indicated that he had been fearful of a potential 56-year sentence and believed that others would inculpate him. Fitzgerald further asserted that he was innocent of the charges, claiming that he did not fire bullets into the home and did not know what the others had planned.

Fitzgerald indicated that he wanted to go to trial, but he also expressed that he thought he could have asked for a better deal from the State.

{¶ 24} Based on Fitzgerald's statements, the trial court reasonably concluded that Fitzgerald had made a calculated decision to accept the State's plea offer and that his request to withdraw his plea – after his co-defendants had either pled or gone to trial – represented a change of heart. The trial court thus reasonably concluded that Fitzgerald did not present a legitimate basis to withdraw his pleas.

{¶ 25} Fitzgerald's first assignment of error is overruled.

### III. Maximum Sentence

{¶ 26} In his third assignment of error, Fitzgerald claims that the trial court erred when it imposed a maximum sentence on one count of felonious assault. He argues that, given his lack of criminal history, the maximum sentence was an abuse of discretion under *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 27} At the outset, *Kalish* does not provide the appropriate standard for reviewing Fitzgerald's sentence; that decision was abrogated eight years ago. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 6-7. Rather, in reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *Marcum* at ¶ 9. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 28} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). "It is enough that the record demonstrates that the trial court considered R.C. 2929.11 and R.C. 2929.12 prior to imposing its sentence." *State v. Trent*, 2d Dist. Clark No. 2020-CA-61, 2021-Ohio-3698, ¶ 15. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

{¶ 29} Fitzgerald agrees that the eight-year sentence on Count 4 was within the statutory range. The record further reflects that the trial court complied with its obligations under R.C. 2929.11 and R.C. 2929.12. According to the Ohio Supreme Court, we may not independently "weigh the evidence in the record and substitute [our] judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42. The maximum sentence for Count 4 was not contrary to law, and Fitzgerald's argument is precluded by *Jones*.

{¶ 30} Fitzgerald's third assignment of error is overruled.

### IV. Consecutive Sentences

{¶ 31} In his second assignment of error, Fitzgerald claims that the trial court erred in imposing consecutive sentences. He contends that the trial court failed to make the

necessary findings under R.C. 2929.14(C)(4) and, regardless, that there was no evidence to support any findings under R.C. 2929.14(C)(4)(a)-(c).

{¶ 32} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. *State v. Dillon*, 2d Dist. Greene No. 2020-CA-4, 2020-Ohio-5031, ¶ 44.

{¶ 33} R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 34} In imposing consecutive sentences, the trial court made the required statutory findings. Sentencing Tr. 6-7. The court found, both orally and in its judgment entry, that consecutive sentences were necessary to protect the public and to punish Fitzgerald and that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger that he posed to the public. Additionally, the court found that (1) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses was so great and unusual that no single prison term could adequately reflect the seriousness of his conduct and (2) Fitzgerald's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him.

{¶ 35} Fitzgerald argues the record does not support any statutory findings under R.C. 2929.14(C)(4)(a)-(c). We disagree. Fitzgerald and several others drove to a residence and fired several shots into the home. An adult male was shot and grazed under his arm, an adult female was shot in the arm, with fragments still remaining there, and a 13-year-old child was hit by eight bullets, causing lasting physical and emotional trauma. The trial court reasonably concluded that the severity of the harm caused to the multiple victims justified consecutive sentences. Accordingly, the trial court's finding

under R.C. 2929.14(C)(4)(b) was not clearly and convincingly unsupported by the record.

{¶ 36} As for the trial court's finding under R.C. 2929.14(C)(4)(c), Fitzgerald was 20 years old when the drive-by shooting occurred, and he did not have an adult criminal record. However, the presentence investigation report indicated, and the trial court found, that he had a prior juvenile history which included aggravated riot, assault, probation violations, obstructing official business, criminal damaging, criminal trespass, failure to comply, and receiving stolen property. Several of those offenses would have been felonies if committed by an adult. We have recognized that juvenile adjudications can be used as prior criminal history for purposes of imposing consecutive sentences. *See State v. Lipker*, 2d Dist. Clark No. 2012-CA-55, 2013-Ohio-3278, ¶ 16; *State v. Curtis*, 2d Dist. Miami No. 2021-CA-19, 2022-Ohio-1691, ¶ 9. Upon review of Fitzgerald's juvenile record, we also cannot conclude that the trial court's finding under R.C. 2929.14(C)(4)(c) was clearly and convincingly unsupported by the record.

{¶ 37} Fitzgerald's second assignment of error is overruled.

## V. Conclusion

{¶ 38} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.